## NORTH TEXAS BUILDING & LOAN ASS'N
### v. MOORE et al.
### No. 13120.

Court of Civil Appeals of Texas.
Fort Worth.

March 15, 1935.

Rehearing Denied April 12, 1935.

Bert King, of Wichita Falls, for appellant.

J. R. Wilson, of Wichita Falls, for appellee.

Tarlton Morrow and Harry C. Weeks, both of Wichita Falls, amici curiæ.

DUNKLIN, Chief Justice.

The North Texas Building & Loan Association instituted this suit against Jess

McLarry and Curtis E. Moore for debt with foreclosure of a mortgage lien given to secure the same on a certain lot of land situated in the city of Wichita Falls.

Following is a history of the transactions involved:

On the 20th day of August, 1926, defendant Jess McLarry and wife executed to plaintiff Building & Loan Association a note, reading, in part, as follows:

"For value received, at the maturity on the books of payee of 30 shares of the capital stock of payee, evidenced by certificate No. 3991 in the name of Jess and Fauncein McLarry the undersigned promise to pay North Texas Building and Loan Association, at Wichita Falls, Texas, the sum of $2,000.00, Two Thousand Dollars, same to be paid in equal monthly installments in advance on the 10th day of each month hereafter, with interest thereon from date at the rate of 10 per cent per annum, the interest to be calculated monthly and paid in advance on the 10th day of each month hereafter, principal and all interest to be paid in gold coin of the United States of the present standard of weight and fineness. Interest on interest hereon not paid when due shall also be paid at the rate of ten per cent per annum from date due until paid.

"It is especially agreed that if default shall be made in the payment of any installment of principal or interest hereon, or if any dues or fines on said shares shall remain unpaid when due, and if such default in principal, interest, dues or fines shall continue for thirty days after the due date, then, at the option of the legal holder hereof, the whole amount of this note then unpaid shall at once become due and payable."

The note was secured by a deed of trust on the lot in controversy, executed at the same time by McLarry and wife, and conferred upon the trustee power to sell the property as under execution in the event the holder of the note should exercise the option given therein to mature the note; the proceeds of sale to be applied as follows:

"First: All charges, cost and expenses of executing this trust, including a trustee's fee of five per cent of the sale price.

"Second: The debt and all sums of money due or to become due hereunder in such priority as the law may warrant.

"Third: The overplus, if any, to ourselves or either of us, or legal representatives on reasonable request."

The deed of trust embodied this further provision: "The Charter and By-Laws of said association are expressly made a part of this instrument, which is to be construed in connection therewith."

It also gave the holder of the note the option to declare the note due and payable in the event of default of the maker in meeting other obligations, such as to permit no waste, to keep all improvements in good repair and fully insured against loss by fire, and payment of all taxes on the property before delinquency.

The second note reads as follows:

"Wichita Falls, Texas, 1st day of September A. D. 1928.

"For value received, at the maturity on the books of payee of 35 Savings Shares of the Capital Stock of payee, evidenced by Certificate No. 104 in the name of Jess McLarry et ux the undersigned promise to pay the North Texas Building & Loan Association, at Wichita Falls, Texas, the sum of Two Thousand Five Hundred and No/100 Dollars with interest from date at the rate of 8.4% per annum, the interest to be calculated and paid monthly in advance on the 10th day of each month hereafter, so long as this note remains unpaid; and the payors hereof shall on the 10th day of each month hereafter pay the sum of Fifty Cents, or so much additional as the payors may elect, herein called dues, upon each of the above described shares and upon the accumulation to the credit of said shares, earnings thereon shall be credited at the rate of 6% per annum, compounded semi-annually and when said shares shall become of a value equal to this note, then the principal hereof shall be deemed due and payable. Principal hereof and interest and dues upon said shares shall be payable in gold coin of the United States of America, of the present standard of weight and fineness.

"This note is given to secure funds loaned for the purpose of paying, extending and renewing certain existing liens set forth and described in deed of trust executed by Jess McLarry et ux to North Texas Building & Loan recorded in Book 59 page 627 Records of ——— of ——— County, Texas, to which Records reference is hereby made, and payee is subrogated to all such liens and same are hereby merged

into and renewed and extended by this obligation.

"It is especially agreed that if default shall be made in the payment of any installment of interest hereon, or if any dues or fines on said shares shall remain unpaid when due, and if such default in interest, dues or fines shall continue for thirty days after the due date, then, at the option of the legal holder hereof, the whole amount of this note then unpaid shall become due and payable at once.

"It is further agreed that if this note be placed in the hands of attorneys for collection, or be sued upon, or be established in a probate or bankruptcy court, in any such event an additional sum of 10% on principal and interest unpaid shall become due and payable as attorneys' fees.

"If this note is paid in any manner within five years from date hereof, the payors shall be chargeable with and required to pay an amount of money equal to four full months interest hereon for the privilege of liquidating the same before normal maturity, but if the note is paid after five years, and before the normal maturity no extra interest than the exact amount due shall be chargeable or payable.

"And for the purpose of further securing this note, I, or we, hereby assign and pledge as collateral for this indebtedness the above described shares with special agreement that if default shall be made in the payment of any installment of interest hereon when due, or in the payment of any dues or fines upon said shares, when due, and either or all of said payments shall remain in default for thirty days after becoming due, then at the option of said holder of this note the same shall at once become due and payable in the full principal sum hereof, and the amount of money standing to the credit of said shares shall be credited, first, to the unpaid interest due hereon, balance thereof credited to the principal of this note, and thereupon holder hereof may cause to be foreclosed the lien upon the real estate securing the payment of this note and upon foreclosure and sale of said real estate, the proceeds thereof shall be applied first, to payment of the costs incidental to said sale, second to payment of any unpaid interest due on this note, and third, to the payment of the unpaid portion of principal hereof and the balance thereof distributed in accordance with the terms of deed of trust lien upon said real estate."

The second deed of trust was given to secure payment of the second note, specifically describing it, followed by further provisions authorizing the trustee to advertise and sell the property as under execution and out of the proceeds of sale to pay: "First, all the expenses of advertising, sale and conveyance, including a commission of five per cent to himself; and, then to the said Association or other holder thereof, the full amount of principal, interest and attorney's fees due and unpaid on said indebtedness as hereinbefore set forth, rendering the balance of the purchase money, if any, to the said grantors herein, their heirs or assigns; and said sale shall forever be a perpetual bar against the said grantors herein, their heirs and assigns."

The deed of trust embodied this further provision: "The Charter and By-Laws of said Association are expressly made a part of this instrument, which is to be construed in connection therewith."

On February 27, 1932, Jess McLarry and wife executed to defendant Curtis E. Moore a deed conveying the property in controversy. The consideration recited in the deed was as follows: "For and in consideration of the sum of One No/100 Dollars, to us paid and secured to be paid by Curtis E. Moore as follows: One Dollar cash in hand paid the receipt of which is hereby acknowledged, and the assumption by Curtis E. Moore of a balance due on a $2500.00 note dated September 9th, 1928, due & payable to the North Texas Building & Loan Association of Wichita Falls, Texas, said balance being $1981.61 payable in monthly installments of $30.00 per month, each installment due & payable on the first day of each month during the life of said lien, interest 8%/100 per cent."

At the same time Moore executed and delivered to plaintiff the following agreement:

"Date February 27, 1932.
"North Texas Building & Loan Association

"I have sold to Curtis E. Moore the property upon which you hold a loan, which is described as follows:

                    Sibley-Taylor Addition
Street and No.          Wichita Falls
                            City
            "[Signed]    Jess McLarry

"I have purchased the above described property and do assume the payments of the loan against the same, which is held by the North Texas Building & Loan Asso-

ciation, and agree to make payments upon said loan in accordance with the terms of the note, deed of trust lien and by-laws of the Association.

"[Signed]   Curtis E. Moore."

Plaintiff sought a personal judgment against McLarry and Moore on the second note with foreclosure of the deed of trust lien given to secure the same, the suit against Moore being upon his assumption of payment of that note as expressed above.

Both defendants pleaded usury in both notes, and especially that even if the second note did not by its own terms provide for payment of usurious interest, the first note was, and the taint therein, at all events, inured in the second note. Defendant McLarry paid $366.66 as interest on the first note and $752.50 as interest on the second note, and after Moore acquired title he paid $175 as interest on the second note. And the defendants pleaded that the amounts so paid by them respectively represented usurious interest, which should be credited on the principal of the two notes, respectively, leaving the balance remaining as the maximum for which plaintiff should be awarded a recovery. And in his pleading the defendant McLarry "specially authorizes the said Curtis E. Moore to plead usury and assigns to the said Curtis E. Moore for a valuable consideration said right to plead usury."

On the trial it was agreed that plaintiff was organized and has operated as a mutual building and loan association, under the provisions of the statutes of the state. And after the evidence was closed the following announcements were made to the trial judge, who tried the case without a jury:

"Mr. King (Counsel for plaintiff): Plaintiff North Texas Building and Loan Association dismisses its suit and all claims and causes of action against Jess McLarry, and Jess McLarry dismisses his cause of action and all claims against the North Texas Building and Loan Association, and both of these dismissals are subject to the fact that Mr. McLarry told Mr. Moore a little while before this suit that he might plead usury, if such statement in the face of dismissals is worth anything to Moore.

"Mr. Duff (Counsel for defendant): As I understood the agreement, Jess McLarry settled his cause of action that the North Texas Building and Loan Association had against him, which agreement was made after the testimony was all in at the former hearing on this case. It was the understanding that our cross action and his suit were dismissed."

The judgment rendered recites the dismissal of plaintiff's suit against McLarry and dismissal of McLarry's cross-action against plaintiff. The court then finds and concludes as follows: "Whereupon, further evidence was offered in said matters, and the court, after hearing the evidence and considering the case fully, overrules plaintiff's exception to defendant's answer and finds that there was usury in the original contract, and by reason of consent therefore given by Jess McLarry to Moore to plead such usury that all of the interest paid on either the original note or on the renewal note by either the said Jess McLarry or Curtis E. Moore should be credited against the principal advancements made by the North Texas Building & Loan Association to Jess McLarry, and that the said Curtis E. Moore should have, by reason of the consent given McLarry, and the right to off set all payments that he made, as well as of that McLarry made against the principal advancements on said note; the court further finds that Jess McLarry paid upon the original note made 22 payments designated as interest at $16.66-2/3 per payment, totaling $366.66, and after renewal, which was of date September 1, 1928, Jess McLarry paid 43 payments designated as interest at $17.50 per payment, totaling $752.50, and that Curtis E. Moore, after he assumed said indebtedness, paid 10 payments designated as interest payments at $17.50 each, totaling $175.00, and that the amounts of $2000.00 and $800.00 advanced by the plaintiff to the defendant, Jess McLarry, were credited by plaintiff with dues paid and dividends credited thereon; and the court further finds that all so-called interest payments in the sum of $1294.16 should be credited against said advances or loans so made; and the court further finds that Jess McLarry reduced the principal to the time of renewal by payments of dues and dividends credited thereon to the amount of $300.00, and that the plaintiff, North Texas Building & Loan Association, then advanced to him $800.00 new money in addition to the $2000.00 originally advanced, and that the renewal loan principal was reduced by application of dues paid and dividends credited thereon in the sum of $570.89, and that of this amount Curtis E. Moore paid only $12.50; and it appearing to the court that after the

credits are made as above outlined that the plaintiff is entitled to recover of and from the defendant, Curtis E. Moore, the sum of $634.95, together with 10% on same as attorney's fees, or the sum of $63.50."

Judgment was rendered in accordance with those findings and conclusions, with foreclosure of the mortgage lien as prayed for, from which plaintiff has appealed.

The first question to be discussed is whether or not the first note and deed of trust given to secure its payment gave the holder—in the event of the exercise of the option expressed therein and in the deed of trust—the right to mature it by reason of default in meeting interest payments when they become due, as specified.

■ The decisions of our Supreme Court, in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269, and Bothwell v. Farmers' & Merchants' State Bank & Trust Co., 120 Tex. 1, 30 S.W.(2d) 289, 76 A. L. R. 1480, are now controlling in this state to the exclusion of many former decisions therein discussed, some in conflict therewith. By those decisions it is definitely settled as the law of this state that a stipulation for payment of interest in advance at the rate of 10 per cent. per annum is not usurious, and that an agreement to pay interest on interest already accrued at the same rate is likewise not usurious. And, further, that in testing such a contract to determine whether or not it provides for usurious interest, if the contract is plain and unambiguous, it must be interpreted as written, but if ambiguous, and according to one construction it is usurious but according to another is free from that vice, the latter must prevail.

■ It thus appears that there was no provision for compound interest, the interest provided being on installments of principal only. And the advance interest for each month would be due 10 days before the beginning of that month. In other words, the first installment of principal would be due one month after date of the note, to wit, August 20th, and another installment would be due on the 20th of each successive month thereafter, and interest on each would be due on the 10th of the preceding installment month. This advance interest added to 10 per cent. on the principal of the installment would make the total in excess of the maximum fixed by our usury statutes. But the option given

to accelerate the maturity of the note for failure to pay the interest in that installment of principal on its due date could not be exercised until 30 days thereafter. We believe the language, "the whole amount of this note then unpaid shall at once become due and payable," in the event of default in meeting the obligations expressed in the note, should be interpreted as meaning the amount of principal and interest accrued thereon and unpaid when the option is exercised, and especially so when read in connection with the by-laws of the association, which contained provisions to the same effect as those of article 859, Rev. Civ. Statutes, according to which, should the borrowing shareholder desire to repay the loan, he "shall be charged with the amount of the original loan, together with all the arrearages of interest, premium and fines and other legal charges, and shall be given credit for the withdrawal value of his shares pledged as security; and the balance shall be received by the association in full satisfaction of said loan." It cannot be said that the interest therein mentioned was intended to mean unlawful as well as lawful interest. Furthermore, the language "shall at once become due" would include the installment already due and default of which was the ground given for exercise of the option; thus giving rise to the inquiry whether or not all other installments not yet due were likewise intended to be included in the meaning of "the whole amount of this note then unpaid." We believe such to be a reasonable construction of the language of the note and deed of trust, and should be followed in accordance with decisions noted, even though it should be further said that the stipulation copied is also capable of a contrary interpretation. The language of the note and deed of trust now under discussion distinguish this case from the Shropshire and Bothwell decisions and others, wherein the stipulations for accelerating maturity of the notes involved specifically included unearned and unpaid installments of interest within the amounts which the holders could demand when they should elect to exercise the options given.

■ The second note does not provide for payment of the principal in monthly installments, the only monthly payments being for interest on the principal and are made payable each month in advance. And both in the note and in the deed of trust for default in meeting those interest in-

402

stallments, the option is given the holder to mature them and at once collect "the whole amount of this note then unpaid." As in the first note, these interest payments were to be made on the 10th day of the month preceding the month for which interest is charged, at the rate of 10 per cent. per annum, which would amount to payment of the interest 20 days in advance of its accrual, and that would aggregate a greater rate of interest than 10 per cent.

In this note, as in the first, it is provided that when the holder elects to exercise his option, "the *whole amount of this note then unpaid* shall become due and payable at once." (Italics ours.) Our conclusion already reached on the interpretation of the same stipulation in the first note is applicable to the second note and deed of trust for the same reasons; and for the further reason the second note stipulates that in case of default in payment of stock dues and fines, "then at the option of said holder of this note the same shall at once become due and payable in the full principal sum hereof." The principal of the note would not of course include future interest which had not accrued and had not become due.

 We conclude further that defendant Curtis E. Moore's written contract of assumption of payment of the second note as a part of the purchase price for the property in controversy and plaintiff's acceptance of that contract, followed by Moore's payment of 10 interest payments, aggregating $175, on the note, bound him to pay same, even though it could be said that as between plaintiff and McLarry it was tainted with usury which McLarry could have urged as a defense in the suit against him. The note did not represent a loan to Moore. His obligation to assume its payment was a part of the purchase price he agreed to pay McLarry for the property, and the taint of usury in the note, if any, did not inure in his contract of assumption. Moore v. Temple Trust Co. (Tex. Civ. App.) 60 S.W.(2d) 828, and decisions there cited (writ refused); Martin v. Temple Trust Co. (Tex. Civ. App.) 67 S.W.(2d) 429, writ refused.

The foregoing conclusions render unnecessary a determination of the merits of other reasons advanced by appellant for a reversal of the judgment of the trial court.

But for the reasons indicated, the judgment of trial court is reversed, and judgment is here rendered in favor of plaintiff against appellee Moore for the debt with foreclosure of lien as prayed for.

On Motion for Rehearing.

After Moore had assumed McLarry's note as part of the consideration for the sale of the property to him by McLarry and especially after plaintiff, the payee of the note, had accepted that contract of assumption and Moore had made partial payments thereon, McLarry and Moore could not impair that obligation by McLarry's assignment to Moore of the right to plead usury to the note which Moore had assumed. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672, and authorities there cited.

Upon further consideration of the authorities, we are convinced that we did not err in any of the conclusions reached on original hearing and, accordingly, the motion for rehearing is overruled.