## ASSOCIATES INV. CO. v. LIGON.
### No. 9697.

Court of Civil Appeals of Texas. Austin.

Feb. 18, 1948.

Smith and Pollard, of Austin, for appellant.

Wm. Yelderman, of Austin, for appellee.

HUGHES, Justice.

This is a usury case arising from the sale of an automobile.

Baxter Used Cars of Austin, Texas, sold the car to appellee, Louis Ligon. Appellant, Associates Investment Company financed a portion of the sale price.

Appellee orally agreed to pay Baxter $1,300 for the car and of this amount he paid Baxter $740 cash, leaving $560 owing, which amount the parties understood was to be obtained from a finance company. Before the car was delivered or the sale completed, Baxter and appellee went to the office of appellant where a conditional sales contract was entered into which recited that appellee was the Buyer, Baxter the Seller; that the "cash price" of the car was $848, the "down payment" $288; the cash, "deferred", balance, was $560; the "total finance charge and insurance premium for which credit is extended" was $197.50; and the "time balance" was $757.50.

Included in this contract was appellee's note payable to Baxter for $757.50, payable in fifteen equal monthly installments of $50.50, with interest after maturity only.

This note was immediately endorsed without recourse by Baxter to appellant for a consideration of $560. Appellee has paid appellant the full amount of this note, except for a rebate of $3.79.

Fifty-three dollars and twenty-one cents of the $197.50 finance charge was for insurance, the balance was for "carrying the loan." If the difference between $197.50 and $53.21—$144.29—is interest, the loan is plainly usurious.

Appellant seeks to overcome this interpretation of the transaction on the theory that there was a difference between the "cash price" for the car and its "credit price," this difference being the amount

which the finance company charged for carrying the loan, which "credit price," appellant says, is fixed in the conditional sales contract.

From this premise, appellant argues that it is permissible for a merchant to have a cash and credit price for his merchandise, and to sell at the credit price without being subject to the pains and penalties of usury, citing Graham v. Universal Credit Co., Tex.Civ.App., 63 S.W.2d 727; Rattan v. Commercial Credit Co., Tex.Civ.App. 131 S.W.2d 399, writ ref.; Standard Supply & Hardware Co. v. Christian-Carpenter Drilling Co., Tex.Civ.App., 183 S.W.2d 657, writ ref., and Bond Auto Loan Co. v. Burch, Tex.Civ.App., 171 S.W.2d 154.

We cannot agree with appellant that the finance charge is a part of the credit price. It would be most unusual for a cash sale contract to specify the credit price or for a credit sale contract to specify the cash price. The contract would be for one price or the other, unless the buyer is given an option which usually is in the form of a discount, if paid within a certain time. The contract here specifies but one sale price and whether it be a cash or credit price is not material. The amount of the down payment is plainly stated and so is the amount of the unpaid purchase price. That the $197.50 was not a part of the purchase price is obvious unless we ignore the contract which states that this amount was for the "total finance charge and insurance premium for which credit is extended." Omitting insurance, this language is a fair definition of "interest."

■ There is conflicting evidence as to whether Baxter quoted two prices to appellee, one for cash and the other for credit. Appellee denied this and since trial was without a jury, his version must be accepted in support of the judgment.

■ We also note that appellant did not own the car, did not sell the car, and was not interested in the sale price except as bearing upon the amount of loan it would make. All appellant did was to lend or advance the unpaid purchase price of $560 at a rate of interest shown to be usurious.

In the Graham case, supra, the seller had a cash and credit price; the buyer accepted the credit price and executed his obligation for the unpaid balance. It was held the cash price could not be used so as to make the transaction usurious.

The Rattan case, supra, is like the Graham case, the buyer elected to purchase for the credit price and there was no usury, and the law was there stated to be:

"Where, in a bona fide sale, no loan of money is involved, a purchaser buys an automobile from a regular automobile dealer for a credit price, known to the purchaser to be higher than the cash price, and signs a note and chattel mortgage for the unpaid balance, such transaction is an actual sale of the automobile on time or credit selling price, mutually agreed upon by the parties, and such note and mortgage thus given for the balance, providing for interest, only in case of default, at the highest legal rate, is not usurious. A seller may demand one price for cash and another and greater price upon credit, and it would not be usury."

A loan of money was involved here and the seller and buyer did not agree that the sale price was to include finance charges. The sale of the car and procurement of the loan was a simultaneous transaction, and if the finance charge is to be considered a part of the purchase price, the transaction was not bona fide, but a mere device to hide usury.

The Standard Supply case, supra, reiterates the rule that a seller may have a cash and a credit price.

In the Bond case, supra, recovery for usury was allowed, the trial court having found with the buyer as to amount of the purchase price in the face of the written contract and note which stipulated a higher price.

None of these cases support appellant's position under the facts before us. Appellant exacted more than legal compensation for the use of its money, and the loan was usurious.

The judgment of the trial court is affirmed.

Affirmed.