**G. F. C. CORPORATION v. WILLIAMS.**

No. 14230.

Court of Civil Appeals of Texas.
Dallas.

May 26, 1950.

Rehearing Denied June 23, 1950.

Burt Barr, J. Lee Zumwalt, E. L. Smith and Irion, Cain, Bergman & Hickerson, all of Dallas, for appellant.

Mullinax, Wells & Ball and Marion C. Ladwig, Dallas, for appellee.

BOND, Chief Justice.

Billy Williams, appellee, instituted this suit against G. F. C. Corporation, appellant, to recover (1) for statutory penalty of double the amount of alleged usurious interest paid (Art. 5073, Vernon's Ann.Civ. St.); and (2) for damages as a result of car collision, for failure of the defendant to take out insurance covering such damages.

On June 26, 1948 appellee purchased an automobile from C. L. Luck Motor Company (used-car dealer), for the sum of $1,250. Williams paid $150 cash and a

trade-in allowance for an old car at agreed value of $340, leaving a balance of $760 to be financed. During the negotiation and before the transaction was closed, Mr. Luck of Luck Motor Company, who was negotiating the transaction with Williams, called the defendant G. F. C. Corporation by telephone in regard to financing the unpaid balance of the consideration. Luck gave the party to whom he was talking full credit information with respect to Mr. Williams, the kind and character of the car involved, and the agreed consideration therefor. After making the investigation, Mr. Luck was advised that the corporation would finance the unpaid balance of the consideration; whereupon Mr. Luck closed the sale by having Mr. Williams to execute a note, using the rate chart furnished by G. F. C. Corporation, for the sum of $979.95 payable to C. L. Luck Motor Company or order in 15 installments of $65.33, which amount included the $760 that the Finance Corporation had agreed to finance, $46.88 premium for a $75-Deductible Collision Fire and Theft Insurance on the car and $173.07 "finance charges." The rate chart used did not show specifically how the excess of $173.07, above the amount financed, was to be applied, or for what purpose it was added into the note. Mr. Lewis of the G. F. C. Corporation testified that they furnished blank notes, chattel mortgages, wholesale chattel mortgages, regulation W-day transactions, purchaser's statements and rate charts to various dealers in automobiles, and had furnished such blanks to C. L. Luck Motor Company; that in the deal with Williams, Luck had used and sent to his company its rate chart, filled out with Williams' note and mortgage showing the sale price of the automobile as above related, leaving an unpaid balance of $760 to be financed,—for which the note of $979.95 was executed; that $219.95 was added into the note to cover insurance and "finance charges"; the interest to be at the rate of 10% from maturity. Mr. Luck testified that before he closed the deal with Williams he called G. F. C. Corporation in regard to financing the unpaid balance of $760, gave all necessary information in

reference to Mr. Williams, the sale price of the automobile at $1,250,—cash payment $150, trade-in car at $340, with unpaid balance of $760; that Mr. Williams would execute the note and mortgage for $979.95 to cover the finance-balance; that he ascertained the amount of the note to be executed by Williams from the G. F. C. Cororation rate chart for loans on automobiles of models such as that purchased by Williams, which amount he considered the "time price." Luck further testified that the G. F. C. Corporation agreed to finance the unpaid balance in accordance with the information furnished; that he made the note and mortgage payable to C. L. Luck Motor Company or order and endorsed it over to G. F. C. Corporation without recourse; and, on payment of the sum of $760 to him by G. F. C. Corporation, he turned the automobile over to the purchaser. Mr. Williams testified that he bought the automobile at the agreed price of $1,250, paid $150 cash and gave the trade-in car at the agreed value of $340, leaving a balance of $760 which was subsequently financed by G. F. C. Corporation for $979.95, which amount he paid to the Corporation in 15 monthly installments from date of the note.

The above is substantially the evidence on the issue of usury.

The case was submitted to a jury on special issues, resulting in findings, (1) that $1,250 was the sale price of the automobile in question purchased by Williams; (2) that the sale price was the same if paid by Williams in cash or upon credit terms; (3) that $1,250 was the selling price made by Luck Motor Company for the automobile in question on date of sale; (4) that more than 10% interest per year was received by G. F. C. Corporation from the purchaser Williams on the note in question; (5) that the employee of G. F. C. Corporation, in accepting the note in question from Luck, had personal knowledge that the amount of the note included an additional amount in excess of 10% interest per annum; (6) that the $173.07 was interest received by G. F. C. Corporation out of the $979.95 note in question; (7) that the addi-

tional amount of $6.75 paid by Williams to the G. F. C. Corporation outside of the note was not interest paid on the $979.95 note; and (8) that $46.88 added into the note was paid by Williams on premium for insurance to be taken out on the automobile by the G. F. C. Corporation. The remaining issues have to do with appellee's cause of action for damages for alleged breach of covenant by appellant to have the car insured, which will be hereinafter discussed.

On the above findings of the jury the trial court entered judgment in favor of appellee against G. F. C. Corporation for double the amount of the $173.07 interest received and collected by appellant, breaking down the $979.95 paid on the note as follows: Financed loan $760; insurance premium $46.88; usurious interest $173.07; total $979.95.

■ The principal contentions of appellant, in effect, are that the $173.07 paid by Williams and received by it, represents the difference between a cash selling price and a time selling price, and that same was not paid as interest on the aforesaid balance of $760 as to come under legal contemplation of usury; and, if the finance charge was compensation for the use or forbearance or detention of money (Art. 5069, V.A. C.S.), knowledge of such fact was not brought to the attention of the Corporation authorities. True, if the finance charge of $173.07 added in the note could be said to be compensation, an addition to the price charged for the automobile sold to Williams on extended credit basis over the current cash price, and such was known to Williams, such charge would be a legitimate commercial transaction. In such a situation no finance loan of money would be involved; the purchaser buys for a credit price known to him to be higher than the cash price, and signs a note for the unpaid balance. "A seller may demand one price for cash and another and greater price upon credit, and it would not be usury." Rattan v. Commercial Credit Co., Tex.Civ.App., 131 S.W. 2d 399, 400, writ refused. The purchaser takes his choice. But if the selling price merely designates the means of computing the amount the seller was to receive and the buyer to pay, and, as a part of such transac-

tion, an arrangement is made for financing a deferred balance in addition thereto which is in excess of 10%, same is usury, irrespective of whether the transaction was made at cash price or credit price. The amount that is exacted of the purchaser is the price paid for the automobile.

■ In the case of Associates Inv. Co. v. Ligon, Tex.Civ.App., 209 S.W.2d 218, a used car dealer sold an automobile, reciting the amount which was the total finance charge and insurance premium for which credit was extended. The court held that the transaction involved interest, and allowed recovery for double the amount of interest paid to the finance company. In Associates Inv. Co. v. Thomas, Tex.Civ.App., 210 S.W. 2d 413, 415, the court made a similar holding, construing "total finance charge and insurance premium for which credit (was) extended" to be interest. In that case the transaction was taken up with the finance company before sale was made and the finance company was advised of the selling price. In the instant case the manager of the finance company had full notice of the finance charge and that the note given therefor was in an amount in excess of the amount of the loan. There is no contention that there was any price on the automobile other than the selling price of $1,250, and no dispute that Williams paid them in addition thereto $219.95 for insurance and "finance charge." Therefore the sale and endorsement of the note to the Corporation would not relieve it of usury on the theory that it was an innocent purchaser. Trinity Fire Ins. Co. v. Kerrville Hotel Co., 129 Tex. 310, 103 S.W.2d 121, 110 A.L.R. 442. We are of the opinion that the evidence sustains the findings of the jury and the judgment of the trial court, and that the finance charge of $173.07, added to the deferred loan and paid, was usury; allowing recovery for double the amount against the G. F. C. Corporation.

■ On appellee's cause for damages resulting to his automobile in collision with another automobile, for failure of the G. F. C. Corporation to take out insurance to cover such damages, the testimony is uncontroverted that the G. F. C. Corporation

agreed to secure a $75-Deductible Loss Insurance Policy payable to Mr. Williams for collision damage to his automobile; that the Corporation added into the note $46.88 for the purpose of its purchasing such insurance; that the Corporation failed to secure the insurance, and during the insurable period the automobile was in collision and Williams sustained loss or damage in the sum of $350—the difference between the reasonable cash market value ($850) of the automobile immediately prior to the collision and the value ($500) immediately after the collision. The only controversial issue reflected in the evidence is that before the collision occurred Mr. Williams was advised that the insurance was not taken out by the corporation and that such insurance could not be secured on the automobile; and as a result thereof the $46.88 added into the note for such insurance was credited by the Corporation on the note. Appellee Williams denied that he received any such information; testified that he was not advised that the insurance had not been taken out before the collision, or that the insurance could not be secured on his automobile. The jury rejected the contention of appellant. In response to special issues the jury found: (8) that the G. F. C. Corporation collected from Williams an insurance premium of $46.88; (9) that the premium collected was for the purpose of purchasing a "$75-Deductible Loss Insurance Policy" to cover collision damage to plaintiff's automobile; (10) that before the collision Williams made no agreement with the G. F. C. Corporation that he, himself, would take out the collision insurance and accept credit on his note for the $46.88. On the findings of the jury and the record evidence the trial court entered judgment in the sum of $225, after allowing $75 for deductible loss and $50 excess in the findings of the jury over plaintiff's pleadings wherein he sought collision damages in the sum of $300.

We have carefully reviewed all of the 26 points of error raised by appellant and are of the opinion that none presents reversible error; hence are severally overruled. The judgment of the court in favor of appellee for the sum of $346.14 statutory penalty for double the amount of usurious interest paid, and for $225 damages to his automobile for failure of the defendant to take out insurance covering plaintiff's loss in collision, is affirmed,—a total of $571.14.