**ASSOCIATES INV. CO. v. SOSA.**

No. 12263.

Court of Civil Appeals of Texas. San Antonio.

June 6, 1951.

Rehearing Denied July 11, 1951.

Davis, Clemens, Knight & Weiss, Theo F. Weiss, and George H. Spencer, all of San Antonio, for appellant.

John R. Locke, Jr., San Antonio, for appellee.

NORVELL, Justice.

This is a usury case. David Sosa, Jr., recovered a judgment of $585.96 from Associates Investment Company as and for the statutory penalty of double the amount of usurious interest paid by him to the company. Article 5073, Vernon's Ann.Civ. Stats.

The trial judge, in response to a request therefor, made findings of fact and conclusions of law. The following statements set forth in lettered paragraphs are taken from said findings and direct quotations therefrom are indicated:

(a) On March 13, 1948, Sosa purchased an automobile from Dave Hernandez and Henry Rosales, operating under the name and style of "Dave's Used Cars." Sosa made a down payment of $975.00 in cash and paid $25.00 for the tax and title charges on the car. This left a balance of $1,300.00 owing on the purchase price of the automobile, which was to be financed. The agreement was evidenced by a written instrument designated as a "Texas Conditional Sales Contract" which provided that Sosa agreed to purchase the motor vehicle "for a Total Time Selling Price equal to the sum of Items (A and D) in the following tabulation:

| "(A) Total Bona Fide Cash Price of Motor Vehicle 2250.00 plus 25.00 T & T | | | $2275.00 |
|---|---|---|---|
| Down Payment | Trade-in | $ ———— | |
| | Cash | $ 975.00 | |
| (B) Total Down Payment | | | $ 975.00 |
| (C) Unpaid Cash Balance (Deferred Balance) | | | $1300.00 |
| (D) Total finance charge and insurance premium for which credit is extended | | | $ 437.60 |
| Type of Insurance $50.00 DD and Comp.— 24 months | | | |
| (No insurance included unless described above) | | | |
| The Time Balance (sum of C and D) | | | $1737.60" |

(b) Sosa further agreed and executed a promissory note binding him to pay the amount of the "Time Balance" of $1737.60 at the office of the Associates Investment Company at San Antonio, Texas, in twenty-four monthly installments of $72.40 each, beginning on April 15, 1948.

(c) "Only one price was ever made to plaintiff by Dave's Used Cars and that price was, as stated in the conditional sales contract, a 'Total Bona Fide Cash Price of Motor Vehicle $2,250.00 plus $25.00 T & T.'"

(d) The premium on the insurance policy provided for in the Conditional Sales Contract amounted to the sum of $135.00, and "the balance remaining of said $437.60, which is referred to in said conditional sales contract as 'Total Finance Charge and Insurance Premium for which Credit is Extended' after the payment of insurance premium, is the sum of $302.60, which sum was a charge made for the use, forbearance or detention of the sum of $1,300.00, which said sum was the unpaid balance of the purchase price of said automobile for a period of twenty-four months." Certain small refunds were made to Sosa, leaving a balance of $292.48 as the amount of usurious interest paid by Sosa to Associates Investment Company.

(e) Representatives of Associates Investment Company did not participate in the sale of the automobile to Sosa and had no actual knowledge thereof until the company purchased the conditional sales contract and note the week following the sale. The purchase of the contract and note was the first connection the company had with the transaction.

(f) "It was the practice of Dave's Used Cars to sell notes and contracts received by it in connection with the sale of automobiles on forms furnished by defendant (Associates Investment Company), not only to defendant but to several other finance companies; some of these notes and contracts were not sold by Dave's Used Cars at all but were retained by such dealer."

The record further shows, conclusively and without dispute, that the form of sales contract and the note attached thereto were prepared by Associates Investment Company and that the name of the company was printed upon the assignment and transfer forms. The insurance policy covering the automobile was introduced in evidence. It bears date of March 12, 1948, and shows a premium charge of $135.00, the amount found by the trial court. Printed on the face of the policy appears the following, "Named Insured: Associ-

ates Investment Company and its Subsidiaries." The company admitted that it paid the premium of $135.00 to the insurance company. It is therefore undisputed that at the time the company acquired the contract and note on March 15, 1948, it knew that the sum of $302.60 ($437.60 less $135.00) was a "finance charge."

In our opinion, Associates Investment Company was chargeable with notice of the usurious nature of the contract by the contents of the agreement itself, together with its knowledge of the amount of the insurance premium. The majority of the trial judge's findings relate to matters readily disclosed upon the face of the sales contract. This agreement provides for a so-called "Total Time Selling Price," followed by a statement of several specific items which make up this "Time Selling Price." In construing the contract, the specific itemized elements will control the general terms. Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 11 S.W.2d 778, holdings approved by the Supreme Court; 12 Am.Jur. 779, Contracts, § 244; 10 Tex.Jur. 307, Contract, § 175. The contract states that the "cash price" of the vehicle plus tax and title, amounted to $2,275.00 of which $975.00 was paid in cash. It then states that the "Deferred Balance" is $1300.00. "Deferred Balance" in plain English can not and does not mean a sale for cash on the spot. It means exactly what it says, that the money is not now paid, but that payment is deferred. It can not be cash and at the same time deferred. Obviously, the contract says that there is $1300.00 due on the car which is deferred and unpaid but is to be paid in time; a sum that did not have to be paid in cash at the closing of the trade, but at some time in the future. The schedule shows the price of the automobile to be $975.00 cash, plus $1300.00 deferred, or $2,275.00 including $25.00 for tax and title (Items B plus C equals A).

The contract states that the "Total Time Selling Price" is equal to the sum of Items A and D. Upon examination of these items, it is readily seen that Sosa was paying for things other than the motor vehicle alone, for included in said items there appear insurance charges and finance charges. Hence, to say that the "Time Selling Price" of $1737.60 is the credit price for the vehicle is obviously incorrect and proved false by the itemization used to arrive at the total. Insurance premiums paid to a third party constitute no part of a sales price. When we examine the contract to find the price of the vehicle, it is inescapable that such price was $975.00 *cash down payment* and the sum of $1300.00 *deferred balance,* a total of $2275.00, including tax and title charge. When the tax and title charge of $25.00 is eliminated a balance of $2,250.00 is left, and this is the price of the vehicle, according to the contract.

The face of the contract also disclosed the significant fact that the charge made for "tax and title" was $25.00. The Act providing for a motor vehicle retail sales tax article 7047k, Vernon's Ann.Civ.Stats., prescribes a rate of one per cent of the total consideration "paid or to be paid for said motor vehicle and all accessories attached thereto at the time of the sale, whether such consideration be in the nature of cash, credit, or exchange of other property, or a combination of these." Appellant says that the credit price was $2712.60 (Item A, $2275.00, plus Item D, $437.60). One per cent of this amount is $27.13, yet the sum of $25.00 set aside and allocated for tax and title purposes, according to the contract, will not pay the sales tax when computed on a $2712.60 basis, let alone the title expense and licensing costs for the period extending from March 13th to April 1, 1948. Article 6675a-3 Vernon's Ann.Civ.Stats. This circumstance rather conclusively shows that the parties did not contract that the price of the automobile was $2712.60.

Although admittedly, where it is reasonably possible, we should construe a contract so as to render it legal rather than illegal, we do not believe that in order to escape the taint of usury this rule should be extended so as to wholly disregard clauses placed in the contract by the parties themselves and convict one of them of a violation of penal law in underpaying a tax

levied upon the *sales price* of the motor vehicle.

The contract here involved can not be construed as a "credit price contract," without disregarding substance and giving force to such anamolous and contradictory concepts as a "Cash Price" which includes a "Deferred Balance" and a "Time Selling Price" which includes items having nothing to do with the sales price of the motor vehicle involved. The distinction between the present case and Rattan v. Commercial Credit Co., Dallas Court of Civil Appeals, 131 S.W.2d 399 (and other cases similar thereto) is pointed out in G. F. C. Corporation v. Williams, Tex.Civ.App., 231 S.W.2d 565, 567, opinion by Chief Justice Bond, who also wrote the opinion in the Rattan case. From the report of the case cited it appears that Williams, the buyer of the automobile, executed a note for the sum of $970.95, payable to C. L. Luck Motor Company or order in 15 monthly installments of $65.33, which amount included the $760.00 that the Finance Corporation had agreed to finance, $46.88 premium for a $75–Deductible Collision Fire and Theft Insurance Policy on the car, and $173.07 "finance charges."

The Court said: "The principal contentions of appellant, in effect, are that the $173.07 paid by Williams and received by it, represents the difference between a cash selling price and a time selling price, and that same was not paid as interest on the aforesaid balance of $760 as to come under legal contemplation of usury; and, if the finance charge was compensation for the use or forbearance or detention of money (Art. 5069, V.A.C.S.), knowledge of such fact was not brought to the attention of the Corporation authorities. True, if the finance charge of $173.07 added in the note could be said to be compensation, an addition to the price charged for the automobile sold to Williams on extended credit basis over the current cash price, and such was known to Williams, such charge would be a legitimate commercial transaction. In such a situation no finance loan of money would be involved; the purchaser buys for a credit price known to him to be higher than the cash price, and signs a note for the unpaid balance. 'A seller may demand one price for cash and another and greater price upon credit, and it would not be usury.' Rattan v. Commercial Credit Co., Tex.Civ.App., 131 S. W.2d 399, 400, writ refused. The purchaser takes his choice. But if the selling price merely designates the means of computing the amount the seller was to receive and the buyer to pay, *and, as a part of such transaction, an arrangement is made for financing a deferred balance in addition thereto which is in excess of 10%, same is usury, irrespective of whether the transaction was made at cash price or credit price.* The amount that is exacted of the purchaser is the price paid for the automobile." (Italics ours.)

The Court then cites with approval the decision of the Austin Court in Associates Inv. Co. v. Ligon, Tex.Civ.App., 209 S.W. 2d 218, and the opinion of the Ft. Worth Court in Associates Investment Co. v. Thomas, Tex.Civ.App., 210 S.W.2d 413.

It seems to us that the question of the legality of the particular contract here involved has been set at rest by at least four decisions involving the same contract and the same appellant as are now before us. We are in agreement with the clear and forceful statement of Mr. Justice Hughes in the Ligon case, supra, relating to matters *disclosed upon the fact of the written contract* wherein he said:

"We cannot agree with appellant (Associates Inv. Co.) that the finance charge is a part of the credit price. It would be most unusual for a cash sale contract to specify the credit price or for a credit sale contract to specify the cash price. The contract would be for one price or the other, unless the buyer is given an option which usually is in the form of a discount, if paid within a certain time. The *contract* here specified *but one sale price* and whether it be a cash or credit price is not material. The amount of the down payment is plainly stated and so is the amount of the unpaid purchase price. That the $197.50 was not a part of the purchase price is obvious unless we ignore the *contract* which states that this amount was for the 'total finance charge and insurance premium for

which credit is extended.' Omitting insurance, this language is a fair definition of 'interest.'" Associates Inv. Co. v. Ligon, 209 S.W.2d 218, 219. (Italics supplied.)

The above statement relates to the *contract* involved and is a sound and accurate expression of the principle of law that controls this case.

In response to suggested fact distinctions between the present case and the Ligon case, it might be pointed out that the *rule* above stated has been consistently applied by the Austin Court under varying fact circumstances. The Ligon case is cited and followed in Associates Investment Co. v. Baker, Tex.Civ.App., 221 S.W.2d 363. In Associates Investment Co. v. Hill, Tex.Civ.App., 221 S.W.2d 365, 366, the Court points out that the issue of actual notice to the company other than that imputed by the terms of the contract was not raised in the case, but concludes, nevertheless, that the contract was usurious. The Court said: "The evidence shows only one price ($869.13) was asked for the automobile sold to appellee. After the deductions of payments made by appellee, there was left the sum of $530 of the purchase price of said automobile unpaid and for which appellee obligated himself to pay $687.45. Of this sum $119.95 was 'finance charges.'"

In the present case, it appears that by reading the contract, note and insurance policy, which were prepared upon forms promulgated by Associates Investment Company, anyone acting for the company would necessarily know that a $302.60 charge had been made for the use of $1300.00 dischargeable in twenty-four monthly payments. This charge was "interest" as that term is defined by Article 5069, Vernon's Stats., i. e., compensation "for the use or forbearance or detention of money". The compensation or charge specified in the contract was obviously in excess of that permitted by Article 5071 Vernon's Stats., and is therefore usurious. We see no occasion for drawing distinctions as to the sources whereby a transferee of an agreement gains knowledge of the usurious nature of a contract. If it is shown that a transferee may by reading the contract in the light of knowledge possessed by him (such as to amount of insurance premium in this case) and thus ascertain its usurious nature, he is charged with notice of usury. It is not necessary to show this notice "over again" by evidence outside the written contract. Gifford v. State, Tex.Civ.App., 229 S.W.2d 949.

The judgment is affirmed.

MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority. The promissory note in the sum of $1,737.60, payable to Dave's Used Cars in twenty-four monthly installments of $72.40 each, signed by David Sosa, Jr., when construed in connection with the conditional sales contract attached to it, does not show on its face to be a usurious note. The note on its face was a promissory note in the usual form, and only provided for interest after maturity. The sales contract plainly provided that Sosa was purchasing from Dave's Used Cars (a regular used car dealer) a Chevrolet Sedan, for the Time Selling Price of $2,712.60, of which the sum of $975.00 was paid in cash, and the promissory note given for the time balance due. The trial judge at the request of appellant filed additional and amended findings of fact, as follows:

"1. That the Chevrolet automobile which plaintiff agreed to purchase on March 11, 1948, was owned by Dave's Used Cars.

"2. That at no time during the negotiations for the sale of the automobile in question did the purchaser (plaintiff) or the seller (Dave's Used Cars) contemplate or discuss a sale of the automobile for all cash."

These findings are to be regarded as ultimate and controlling findings, and if they are in conflict with other findings, previously made by the trial court, such prior findings are to be disregarded. Rule 289, Texas Rules of Civil Procedure; Waters v. Yockey, Tex.Civ.App., 193 S.W. 2d 575; Anderson v. Geraghty, Tex.Civ. App., 212 S.W.2d 972. These amended findings are supported by the uncontradicted testimony and are sufficient to justify the conclusion that this transaction was a

bona fide sale of an automobile by Dave's Used Cars to David Sosa, Jr., for a Time Selling Price of $2,712.60. David Sosa himself testified that he never contemplated a purchase of this automobile for all cash, and that he only had the sum of $1,000.00 to pay in cash, and that he knew the credit price would exceed the cash price. He further testified that before he gave the $100.00 check as earnest money to close the deal he knew that the car would cost him a thousand dollars in cash and the payment of twenty-four monthly installments in the sum of $72.40 each. It is clear that the loan company, appellant here, had no connection whatever with this transaction until after its final consummation. It merely purchased the note. Therefore, there was no loaning of money, no financing of a balance due, but, under the undisputed evidence, there was a sale of the Chevrolet automobile for a total Time Selling Price of $2,712.60. The only provisions in the conditional sales contract which in any way render this meaning doubtful and ambiguous are two isolated phrases in the tabulation inserted in the contract, to-wit:

"C Unpaid Cash Balance (Deferred Balance)   $1300.00

"D Total finance charge and insurance premium for which credit is extended   437.60"

These two isolated phrases, not appearing in the contractual part of the instrument but merely in the tabulation inserted in the instrument, can not be used to destroy the plain and unequivocal contractual part of the instrument, wherein it is stated that the automobile is being sold for a Time Selling Price. Greer v. Franklin Life Ins. Co., Tex.Civ.App., 109 S.W.2d 305; Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.2d 935, affirming Tex.Civ.App., 60 S.W.2d 826.

A finance charge is not ordinarily to be regarded as interest. In Harper v. Futrell, 204 Ark. 822, 164 S.W.2d 995, 996, 143 A. L.R. 235, the Court said:

"In his motion for a new trial appellant assigned a number of errors. He contends that the court erred in refusing to give his requested instruction No. 4, which reads as follows: 'You are instructed that if you find from a preponderance or greater weight of the testimony that the defendant, Ray Harper, did in fact execute and deliver to plaintiff the contract in evidence, and you further find that the said contract bears a greater rate of interest, or charge for credit, than ten percentum per annum, the contract is void and your verdict should be for the defendant.'

"The court did not err in refusing to give this instruction. This court has held that finance charges in connection with the sale of property under a conditional sales contract are not paid for a loan of money, but are a part of the purchase price which the purchaser agreed to pay, and that there is no usury in a transaction of this kind. See Cheairs v. McDermott Motor Co., 175 Ark. 1126, 2 S.W.2d 1111." See also, Annotations, 143 A.L.R. beginning p. 238.

These two isolated phrases at most merely cast a doubt or raise an ambiguity as to the true meaning of the contract. The construction which the majority opinion gives to these two isolated and ambiguous phrases is a meaning which destroys and sets aside the plain contractual provisions of the instrument. The rule is well established that if an instrument is subject to two constructions, one of which would render it usurious and the other of which would render it non usurious, the courts will give effect to that interpretation which renders the instrument non usurious and therefore legal. North Texas B. & L. Ass'n v. Moore, Tex.Civ.App., 82 S.W.2d 397; Matthews v. Tibbitt, Tex.Civ.App., 120 S.W.2d 503; Goode v. Davis, Tex.Civ. App., 135 S.W.2d 285; 42 Tex.Jur. Sec. 11, p. 889, and authorities there cited.

I am well aware of the fact that where a transaction is usurious in its nature that the courts will look to the intention of the parties and to the transaction itself and will disregard the form or the language used by the parties in their attempt to disguise a usurious transaction, and for this purpose they will hear parol evidence to determine the true intention of the parties and the nature of the transaction, regardless of the language used. 42 Tex.Jur. 885, §§ 8 and 9, and authorities there cited.

However, we are here discussing whether or not this instrument on its face was shown to be a usurious transaction and, under the rule of construction above set out, it is quite plain that this instrument does not disclose that the transaction was tainted with usury. On the contrary, it shows just the opposite. There was a bona fide sale for an agreed credit price. Beete v. Bridgood (English Case) 7 B. & C. 453, 14 E. C.L. 206, 108 Reprint 792; Shirkey v. Hunt, 18 Tex. 883; Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A. L.R. 1437; Rattan v. Commercial Credit Co., Tex.Civ.App., 131 S.W.2d 399; Standard Supply & Hardware Co. v. Christian-Carpenter Drilling Co., Tex.Civ.App., 183 S.W.2d 657.

There is another rule of construction of contracts which might be well invoked, that is a contract should be construed from its four corners and, if possible, in such a way as to give meaning to each and every part of the contract. This can readily be done by giving meaning to the contract wherein it plainly says it is a sale of an automobile for a Time Selling Price, and regarding the tabulation set out in the contract as nothing more than a calculation or work sheet by which the appellant arrived at the Time Selling Price. The construction giving this conditional sales contract by the majority gives meaning only to the two isolated phrases and no meaning whatever to the main provisions in the instrument. It presumes an unlawful intention of the parties rather than a lawful intention. Robertson v. Connecticut Gen. Life Ins. Co., 134 Tex. 588, 137 S.W.2d 760, answers to certified questions conformed to Tex.Civ.App., 140 S.W.2d 936; Foley v. Farm & Home Savings & Loan Ass'n, Tex.Civ.App., 81 S.W. 2d 231.

If we disregard the language of the instrument and turn to the evidence itself to determine the true intentions of the parties and the nature of the transaction, we find from the undisputed evidence that this was a transaction whereby a used car dealer sold to a purchaser a Chevrolet automobile for a cash payment of $1,000.00 and a deferred balance of $1712.60, to be paid in monthly installments of $72.40 each, and that such transaction was fully understood by the parties prior to the closing of the sale. So, whether you take the contract and construe it from its four corners or whether you look through the forms of the contract and the language used, to the substance of the transaction, you come to the same conclusion, to-wit, that this was a sale of an automobile for a Time Selling Price fully understood and agreed to by the parties before the deal was ever closed. This conclusion is supported by the amended finding of the trial judge and the evidence introduced.

This suit is on all fours with the case of Rattan v. Commercial Credit Co., Tex.Civ. App., 131 S.W.2d 399, in which the Supreme Court refused a writ of error. It cannot be distinguished in any way. The majority opinion cites G. F. C. Corp. v. Williams, Tex.Civ.App., 231 S.W.2d 565, 566, opinion by Chief Justice Bond, who also wrote the opinion in the Rattan case. However the Williams case is easily distinguished from the Rattan case, in that in the Williams case a finance company entered the picture before the deal was closed and agreed to finance or loan the money sufficient to take care of deferred payments, while in the case at bar, as in the Rattan case, there was no loan company in the picture at all. Some of the expressions contained in these two cases readily distinguish them. In the Rattan case we find the following statement:

"No money changed hands in the transaction in the form of a loan, nor was any charge made for the use, detention or forbearance of any money. The transaction was simply a sale for credit at a higher price than for cash, calculated on a known basis for the seller to realize the cash price of the automobile by subsequent sale of the note and mortgage through commercial channels."

In the Williams case we find the following notation:

"During the negotiation and before the transaction was closed, Mr. Luck of Luck Motor Company, who was negotiating the transaction with Williams, called the defendant G. F. C. Corporation by telephone in regard to financing the unpaid balance

of the consideration. Luck gave the party to whom he was talking full credit information with respect to Mr. Williams, the kind and character of the car involved, and the agreed consideration therefor. After making the investigation, Mr. Luck was advised that the corporation would finance the unpaid balance of the consideration; * * *." [231 S.W.2d 566.]

The opinion further shows that G. F. C. Corporation paid the money to Luck Motor Company before the car was delivered to Williams. Under such facts, the purchase price of the automobile was loaned by the corporation to Williams before he closed the deal for the automobile, and therefore charges by the corporation for the use of this money at more than 10% per annum would clearly be usurious, and it was so held by the court. In the case at bar no loan company agreed to finance the transaction and the first connection the finance company had with the deal was when it purchased the note from Dave's Used Cars during the week subsequent to the week in which the sales contract was executed.

Aside from all that I have heretofore said, it will be borne in mind that this is not a suit between the original parties to the sales contract, but is a suit between the maker of the note against a holder in due course for the penalty provided for under the provision of Article 5073, Vernon's Ann.Civ.Stats. Under the provisions of the Negotiable Instruments Act, Article 5935, § 59, Vernon's Ann.Civ.Stats., every holder is deemed prima facie to be a holder in due course, and the burden is on the maker to show the contrary. Under Section 52 of said article a holder in due course is a holder who takes the instrument under the following conditions: "1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Under Section 56 of the same article it is provided: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Under Section 57 of the same article, "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

The only exception to this rule made by the Negotiable Instrument Act of this State is that of forgery. Section 23 of Art. 5932, Vernon's Ann.Civ.Stats. However, the courts of this State have held that if an instrument is tainted with usury that the defense of usury is available against the holder in due course. 42 Tex.Jur. 1000, § 99, and authorities there cited.

I have been unable to find a case holding that the penalty provided for by Article 5073, Vernon's Ann.Civ.Stats., can be collected from a holder in due course who has not knowingly collected usurious interest. The provisions of Article 5073 above are penal in their nature and are therefore to be strictly construed and they are only to be applied to a person who has knowingly collected the usurious interest. The leading case in Texas upon this point is that of Fires v. Kinney-Shotts Investment Co., 59 S.W.2d 827. Speaking for the Commission of Appeals, Judge Leddy said:

"Plaintiff in error insists in this court that under the doctrine announced in Gilder v. Hearne, 79 Tex. 120, 14 S.W. 1031, he is entitled to recover the statutory penalty from defendant in error, even though it had no notice or knowledge at the time it collected the interest that there was any taint of usury in the note.

"The provision of the statute which authorizes a recovery of double the amount of usurious interest against the person who receives or collects the same is a penalty. It is an exaction imposed by statute as a

punishment for an unlawful act. One who seeks a recovery under this statute has the burden of proving the existence of facts entitling him to the penalty therein provided.

"It was essential, in order for plaintiff in error to recover the statutory penalty for usury against the assignee of the note, that he allege and prove knowledge or notice upon its part that the interest received and collected was usurious. McDaniel v. Orr (Tex.Com.App.), 30 S.W.2d 489.

"Plaintiff in error misconceives the holdings of the Supreme Court in Gilder v. Hearne, supra, and the line of decisions following said case. None of these cases were actions to recover the statutory penalty for the collection of usurious interest. They were suits either to cancel usurious interest or defenses made against the collection of such interest. When a person seeks to recover on a contract which is usurious, so far as the interest is concerned, he is seeking to enforce a contract which the Constitution declares to be utterly void. Under such circumstances, it is immaterial whether he is a bona fide holder in due course without notice of the fact that the note provides for usurious interest.

"An action under the statute for the penalty provided rests upon an entirely different basis from one wherein a defense is urged against the enforcement of a usurious contract or wherein it is sought to cancel the interest imposed by such a contract. The former is an action under a statute (Rev.St.1925, art. 5073) designed to inflict punishment upon one who has collected and received payment of usurious interest. The statute does not contemplate that a person should be punished for receiving usurious interest when he is innocent of any intent to do so.

"Plaintiff in error vigorously insists that the burden of proof rested upon defendant in error to establish that it had no notice of the vice of usury in the note either at the time it purchased the same or when it received payment of the interest thereon.

"In order to recover the statutory penalty, it devolved upon plaintiff in error to establish that defendant in error collected and received interest in excess of the amount authorized by law, and that in receiving and accepting said sum it intended to take and exact usurious interest. McDaniel v. Orr, supra.

"Plaintiff in this case did not sue to recover as for debt the usurious interest paid. His cause of action is simply one to recover the statutory penalty. The right sought to be enforced rests alone upon the statute. Since he wholly failed to establish that defendant in error had any intent to receive or collect usurious interest, he was properly denied a recovery of the penalty provided by law."

The facts in the instant case and the holding of the trial judge clearly show that appellant was a holder in due course of the note in this case. It had no connection with the transaction until after the deal was closed. It paid value for the note before maturity and there is nothing to show, nor is there a finding by the trial court, that appellant had knowledge of any defense to the note at the time it purchased same. Under the facts appellant was presumed to be a holder in due course, and if appellee's contention was to the contrary it was his duty to offer evidence and to secure a finding of the trial judge that at the time appellant purchased the note it had knowledge of its usurious nature, or that it had such knowledge as to render its acquisition of the note an act done in bad faith.

The mere fact that there may have been facts or circumstances which if investigated would have led to the discovery of a usurious taint the same would not be sufficient. The evidence would have to go further and show bad faith on the part of appellant in purchasing the note.

All of the cases relied upon by appellant can easily be distinguished from the case at bar by the fact that in each of those cases it was either a suit by the original parties to the transaction or it was a suit against a loan company that appeared in the transaction before the deal was closed, offering to finance the unpaid balance. The only case that can not be thus distinguished from the case at bar is that of Associate's

712

Investment Co. v. Hill, Tex.Civ.App., 221 S.W.2d 365. The opinion in the Hill case does not state the facts of the case, nor the reasons for the holding, and therefore it has no value as a precedent. However, if the court intended in the Hill case to hold that the penalty provided for in Article 5073, supra, could be collected from a holder in due course who has innocently collected usurious interest, then it is out of line with all of the other decisions and should not be followed in this State.

For the reasons above stated, I respectfully enter my dissent in this case.