**STANDARD SUPPLY & HARDWARE CO.,
Inc., v. CHRISTIAN–CARPENTER
DRILLING CO.**

No. 11646.

Court of Civil Appeals of Texas.   Galveston.
Oct. 26, 1944.

Two Rehearings Denied Nov. 16, 1944.

K. C. Barkley and Gaius G. Gannon, both of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellant.

Fouts, Amerman & Moore, of Houston, for appellee.

CODY, Justice.

This is a usury case.

Appellee, a corporation, is both an oil well drilling contractor and oil producer. Appellant, also a corporation, deals in oil well supplies.

Appellee sued appellant for $44,070.54, as being double the alleged usurious interest exacted of it by appellant in the sale of oil well supplies. The parties will be referred to hereafter as plaintiff and defendant, respectively.

Plaintiff's petition alleged in substance:

That, beginning in March, 1940, and down to and including August, 1942, plaintiff purchased certain oil well supplies from defendant. Plaintiff was unable to pay for them. Then, in November, 1940, when there were seven outstanding, unpaid invoices, defendant notified plaintiff that unless the account was promptly paid a financing charge of ten per cent could be added to each invoice. And that, upon the amount so arrived at, interest would be charged at the rate of six per cent per annum, beginning with the date that the invoices became due. The amount of the seven invoices, without the addition of any financing charge, totaled $54,079.53.

That plaintiff acquiesced in the imposition of the ten per cent financing charge; and executed seven promissory notes covering, respectively, the amounts of the respective invoices with the ten per cent finance charge added. Each such note was dated as of the date on which the invoice covered by it became past due, and was payable to the order of defendant on demand, and bore interest at the rate of six per cent per annum. The principal sum of the seven notes totaled $58,497.44, there being included in such total the ten per cent financing charge. Each note was endorsed by J. R. Turnbull as accommodation endorser.

Plaintiff's petition contained further like allegations with reference to sales made after those covered by the aforesaid seven notes, and then proceeded to allege in substance:

That plaintiff paid off the entire indebtedness as evidenced by all its notes. The ten per cent financing charge constituted "interest" within the meaning of R.C.S. Art. 5069. And such ten per cent charge, added to the six per cent per annum interest charge, constituted usury within the meaning of said article.

That the ten per cent charge so collected by defendant totaled $11,409.17. And the six per cent per annum charge collected by defendant $10,626.10. The total interest charged and collected by defendant was $22,035.27. And this was interest at a higher rate than ten per cent per annum, and so, constituted usury; which entitled plaintiff to recover double the sum so collected, under R.C.S. Art. 5073.

Plaintiff's petition also contained an alternative count which went out of the case in the trial court, and need not here be noticed.

Defendant's answer, after traversing all of plaintiff's allegations, alleged in substance: That the ten per cent financing charge, so called in plaintiff's petition, was in reality the differential in price between

the merchandise when paid for currently, and when bought on extended credit, to be paid for at some indefinite time.

At the conclusion of all the evidence both parties moved for an instructed verdict. The court refused both motions, and submitted the case to the jury upon special issues. When the verdict was returned, both parties moved for judgment thereon. Plaintiff additionally moved for judgment notwithstanding the verdict, and, alternatively, moved for judgment on the verdict in the sum of $19,993.08, based on the contention that the verdict showed all merchandise purchased before August 27, 1941, was purchased on a usurious contract. The court refused all motions except plaintiff's said alternative motion. And judgment was rendered for plaintiff in that sum, together with interest thereon from law day (February 15, 1944) at the rate of six per cent per annum. Both parties assail the judgment here.

Both parties contended below, and contend here, that the evidence which was submitted to the jury was undisputed. This contention appears to be correct. The evidence in substance was:

That near the end of the year 1939, three of the former employees of J. R. Turnbull organized plaintiff-corporation. Mr. Turnbull was retiring from business and donated to them a drilling outfit worth about $50,000, which was originally the sole assets of the corporation. Turnbull had conducted a large and flourishing business in the same line that plaintiff was organized to engage in, and had been a valued customer of defendant. Unknown to his former employees Turnbull had told defendant to sell plaintiff what was required, and that he would guarantee the account. The guaranty was verbal, but was acceptable to defendant.

Plaintiff promptly paid off the first invoices, but failed to pay off the invoices covering sales for the months of March, May, June, July, and August, 1940. About September 15, 1940, plaintiff wanted material necessary to complete its Rorick well. At the time it had cored 23 feet of sand in the well. Its unpaid account with defendant amounted to $22,331.87, as of August 31, 1940. Plaintiff had branched off from doing a contract drilling business and was drilling for its own account in holdings it had acquired in the Joyce Richardson Field, in Harris County.

When plaintiff requested defendant to sell it the material necessary to complete the Rorick well, defendant agreed to do so on an extended credit basis provided that plaintiff would pay a ten per cent financing charge or bonus for such material in addition to the current prices for said material, and provided further that plaintiff agree to apply a ten per cent financing charge retroactively to the outstanding unpaid account—the account to be covered by notes bearing six per cent interest per annum to be endorsed by Mr. Turnbull. It was then recognized by the parties that plaintiff was dependent for paying its account upon its holdings in the Joyce Richardson Field, either from production therefrom, or selling its holdings, or mortgaging them. Plaintiff was to be given a reasonable time in which to work out its holdings. The purpose of the notes from the standpoint of defendant was twofold. To clear the account from its books, and to have it guaranteed by Mr. Turnbull's endorsement. Plaintiff agreed to the arrangement.

Pursuant to its commitment defendant furnished the material necessary to complete the Rorick well. Then a few days later, about September 23, 1940, plaintiff applied to defendant to sell it the merchandise necessary to drill three more holes on its holdings. Defendant agreed to do this upon the same basis that it agreed to furnish the Rorick well materials.

The value of the Rorick well materials necessary for its completion which defendant supplied plaintiff was some $7,000. The material furnished to drill the three wells raised the account to about $65,000.

Mr. Turnbull appears to have been living in California. The president of defendant had talked to him over the 'phone about the arrangement, and Mr. Turnbull had agreed to it, and telegraphed that he would endorse the notes. He returned to Texas in November, 1940, and on November 25, 1940, he endorsed the notes, seven in number. Each note covered an invoice for the sales for the months of March, May, June, July, August, September, and October, 1940, respectively.

The invoice covering the sales made in March, 1940, was dated April 1, 1940. The invoice provided, if paid before the expiration of 20 days, for a 2% discount, and provided further for the payment of the prices therein specified (which were current prices) within thirty days. Such in-

voice did not become past due until May 1. The note executed to cover said invoice was dated May 1, 1940, and bore interest at the rate of six per cent per annum from date. It was payable on demand. And so with the other notes. The note covering the October sales was dated December 1, 1940, though, of course, the invoice covering October provided that the current prices shown thereon became past due at the expiration of November 30, 1940. The seven notes were actually executed on November 25, 1940, the same day they were endorsed by Turnbull.

The notes given after November 25, 1940, covered the invoices which were sent out for the sales of the balance of the material which defendant agreed in September to sell plaintiff. And in all material respects they followed the same plan outlined.

At the conclusion of its drilling program plaintiff had produced no black oil. But its holdings had been developed as distillate property. To market the distillate it was necessary to put in a recycling plant. The cost of the materials therefor would come to some $50,000. When plaintiff had obtained a contractor to put this plant in, it requested a commitment from defendant, addressed to the contractor, to furnish the desired equipment. Defendant agreed to do so. Plaintiff's attorney drafted the commitment for defendant to execute, and as executed it reads:

"Houston, Texas
"August 27, 1941
"Mr. H. M. Harrell
"Shreveport, Louisiana
"Dear Sir:
"The Christian-Carpenter. Drilling Company and Joyce Richardson, as Owners in a certain contract of even date herewith having to do with the construction of a pressure maintenance plant in the Joyce Richardson Field, Harris County, Texas, had agreed to furnish the following equipment necessary for the construction of the plant: valves, fittings, meters, and piping. With respect to this equipment, our company agrees to sell same to said parties on an extended credit basis and we agree to place orders immediately with the necessary supply houses to make this equipment available for this account.
"Yours very truly,
"Standard Supply & Hardware Co., Inc.
"By (Signed) A. T. Webb,
"Vice-President."

It will be noted that the above commitment also provides for the sale to be on an extended credit basis. The method of handling the sales of these materials, and sending out invoices, and giving notes thereon was in every material respect similar to the September, 1940, commitments.

It is plaintiff's contention that the invoices presented the terms of the sale, and that these terms provided for a 2% discount on the current prices if paid within 20 days, and called for the payment of the current prices within 30 days. That after the end of thirty days the prices became past due, and that the following month (except as to the sales down to and including August 31, 1940) the defendant billed plaintiff for the ten per cent financing charge. And that this ten per cent financing charge was, under the undisputed facts, and under the only reasonable conclusion that could be drawn therefrom, a charge for detention of money due defendant. Hence interest under R.C.S. Art. 5069.

The relevant special issues as answered by the jury are appended to this opinion.

### Opinion.

■ A transaction which is attacked as usurious "is to be tested by its substance, not its form, and, if from all the facts its essence is found to be the receiving or contracting for a greater rate of interest than is allowed by law, the statutory consequences must be visited upon it." Independent Lbr. Co. v. Gulf State Bank, Tex. Civ.App., 299 S.W. 939, 942, writ refused.

■ If the ten per cent financing charge here involved was compensation for "the use or forbearance or detention of money," it was "interest" within the meaning of R.C.S. Art. 5069. See Parks v. Lubbock, 92 Tex. 635, 51 S.W. 322. If the ten per cent financing charge was an addition to the price charged for merchandise sold on an extended credit basis, over the price of the merchandise when sold on a current basis, at current prices, such charge is a legitimate commercial transaction. Rattan v. Commercial Credit Co., Tex.Civ.App., 131 S.W.2d 399, writ refused.

In practical effect upon the finances of a seller and buyer, there is no distinction between these two transactions, to-wit:

(1) Where a merchant sells merchandise upon an extended credit basis for a price ten per cent over the current price of

the same merchandise sold on a current account basis, the amount of such indebtedness to bear interest at the rate of six per cent per annum; and

(2) Where a merchant sells merchandise on a current account basis at current prices, and then, after the customer is in default on the payment of his account, the parties by agreement undertake to transform the transaction into one upon an extended credit basis, by agreeing to add ten per cent to the original purchase price, retroactively, and have the said past due account to bear interest at the rate of six per cent per annum retroactively from the date the account became in default.

■ But the fact that there is no distinction in practical effect in the two foregoing transactions does not mean that in law there is no distinction between them.[1] Our laws fix the limit on the compensation which can be agreed upon for the use, forbearance and detention of money. But they fix no limit on the prices for merchandise. And a merchant may freely sell merchandise at a higher price for credit than he will charge therefor when sold on current account. Therefore, a merchant is free to figure the loss which he will suffer by selling merchandise on credit, and add such sum to the credit price. But if the merchant, after his customer is in default for money due on current account, undertakes to add, retroactively, say 12% to the current price, and collect interest retroactively, he is violating the usury laws of Texas.

It will be noted that the sales of merchandise by defendant to plaintiff fall into four categories.

1. The sale of merchandise upon current open account. Such sales occurred in March, May, June, July and August, 1940. And plaintiff did not pay this indebtedness currently, but owed the entire account for these months when the agreement of September 15, 1940, was made.

2. The sale of the merchandise with which to complete the Rorick well, made upon an extended credit basis, under the agreement of September 15, 1940, which agreement also provided for the same terms to be applied retroactively to the open account which was then in default.

3. The agreement covering the sale of the materials for drilling the three wells, made about September 23, 1940.

4. The agreement covering the sale of the material for putting in the recycling plant.

The answer of the jury to Special issues Nos. 8 and 9 is in effect that the sale of the material for the Rorick well was made on an extended credit basis, for a price ten per cent over the current price of such materials. That is, "that plaintiff would not be required to pay for any supplies and materials which it already had purchased from defendant or should purchase for the completion of the Rorick well until it had a reasonable opportunity to obtain funds therefor either from production from, or a loan on, or a sale of its Joyce Richardson Field holdings."

■ The agreement of September 15, 1940, undertook retroactively to boost the amount due on the open account indebtedness ten per cent by adding thereto the ten per cent financing charge, and to do so as of the date the account became in default. At the time of this agreement defendant had parted with all title to such merchandise, and plaintiff was detaining from defendant the money due therefor without any legal right to do so. The purpose and intended effect of the agreement was to give plaintiff the legal right to detain the money due defendant upon open account for the reasonable time referred to in Special Issue No. 8, quoted above. The ten per cent added to the amount of the open account, plus interest at the rate of six per cent per annum from the date that the account became in default until paid, amounted to interest at a higher rate than that allowed by law.

■ Defendant does not question, that, if all plaintiff obtained for the ten per cent financing charge which was added to the sum due for the merchandise purchased down to and including August 31, 1940, was the right to detain the money so due defendant for a reasonable time, that said ten per cent financing charge, as applied to

---

[1] For a good brief account of the development of the distinction between interest and usury, and whereby the taking of compensation for the use of money ceased to be a sin and a crime, see Holdsworth's "History of English Law," Vol. 8, pp. 100–112.

said past due account, constituted "interest." But defendant insists that, in addition, plaintiff obtained under the agreement of September 15, 1940, the right to buy the Rorick well materials on an extended credit basis. This contention boils down to the proposition that an agreement to sell merchandise upon credit can justify an agreement for usurious interest. We disagree with such contention.

Defendant further urges that the ten per cent financing charge which was added to the past due account was not "interest" thereon at all, but was an added sum paid as part of the purchase price of the Rorick well materials. They is to say, that the purchase price of the Rorick well materials was agreed to be ten per cent over the current price, plus ten per cent added to the open account for March, 1940, to bear interest at the rate of six per cent per annum from May 1, 1940, plus ten per cent added to the account for May, 1940, etc., etc. Had the parties themselves formally agreed to such terms of sale for the Rorick well materials as defendant suggests should be set up by way of construction, the court would itself be confronted with the question of whether such terms in the sale was but a shift to procure the payment of a higher than the legal rate of interest on the past due account. But the answer to the contention is the parties made no such agreement.

We hold as a matter of law that the agreement of the parties, as found by the jury in answer to Special issues Nos. 8 and 9, in so far as it provided for the ten per cent financing charge to be added to the past due account, taken together with the interest collected on such past due account at the rate of six per cent per annum, amounted to interest at a higher rate than ten per cent per annum. Collecting the ten per cent financing charge added to the account for the months of March, May, June, July and August, 1940, together with interest on said account at the rate of six per cent per annum, amounted in law to collecting usury.

■ But we find that the addition of the ten per cent financing charge to the price of the Rorick well materials prior to the sale thereof, and before title passed, was not "interest," but a higher price for the merchandise when sold on an extended credit basis. The collection by defendant of such higher purchase price, together with interest thereon at the rate of six per cent per annum, did not constitute the collection of usury.

In view of the fact that the evidence established, and the jury found, that the Rorick well materials were sold on an extended credit basis upon the understanding that the ten per cent financing charge should be added to the current price of such materials (and we so construe the verdict), established that said ten per cent was not compensation for the detention of money within Art. 5069.

■ The fact that defendant sent out the form of invoices which it used when it sold merchandise on current open account is immaterial, in view of the fact that the contract of sale was made on extended credit basis, and the parties always so understood it, and treated it. Under these circumstances the provisions of the invoices which upon their face permitted the payment thereof for a 2% discount on the current prices, and which permitted the payment of current prices within 30 days, were lagniappe. Plaintiff never accepted such provisions or offered to do so. And it was never contemplated that plaintiff could or would pay therefor except out of production, etc., from its holdings in the Joyce Richardson Field.

■ Special issue No. 1 is not in conflict with Special issues Nos. 8 and 9. In Special issue No. 1, the jury found in substance that the provisions in the invoices for discount at 2%, or for payment at current prices were no part of the contract of sale of the Rorick well materials.

The contract of sale of the materials for the three wells, made about September 23, 1940, was in all material respects similar to the contract of sale of the Rorick well materials, and is governed by the same rule of law. Therefore the ten per cent financing charge as applied thereto represented the increased price of said materials over the current price, when sold on extended credit basis. Said charge was not "interest" within Art. 5069.

■ The answer of the jury to Special issue No. 10 is, in our opinion, reconcilable to its finding that the sales were made on an extended credit basis, and were not to be paid for until plaintiff had a reasonable opportunity to pay for same out of funds

derived from its holdings in the Joyce Richardson Field. There was ample evidence to the effect that the parties agreed before November 25, 1940, for the accounts to be covered by notes, which were endorsed by Turnbull, and the accounts dropped from defendant's books.

■ From its answer to Special issue No. 11 we see that the jury inferred that the parties agreed that provisions of the invoice as to the 2% discount, and as to the right to pay for the recycling plant material at current prices within thirty days, were terms of the sale of such material. We assume in support of the jury's verdict there was evidence to support the finding. But it was undisputed that the sale was made on an extended credit basis, and the only inference possible to be drawn is that the ten per cent financing charge was a part of the purchase price of material, agreed to prior to defendant parting with the title to such material.

■ We cite for its general application here Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.2d 935, 936: "The determination of whether or not usury exists in a contract is a matter involving first and pre-eminently the principle which is the polestar of construction, to wit: The ascertainment of the dominant purpose and intention of the parties embodied in the contract, interpreted as a whole, in the light of the attending circumstances and the governing rules of law which presumptively they intended to observe and obey in making the contract."

■ Defendant complains of the action of the court in refusing the request of the jury to have the evidence bearing upon "discount" to be read to the jury. We are unable to hold that the court's refusal of the request was an abuse of discretion. And, in view of the fact that the question as to a privilege of a discount which was not exercised is immaterial, no harm could have resulted to defendant. We overrule the point.

Defendant has presented other points complaining of the court's admission or exclusion of evidence. We have considered such points and overrule them.

We note from the Statement of Facts that the amount of the finance charge, and of interest at the rate of six per cent per annum collected by defendant, were as follows on the past due open account:

|  | Finance Charge of Ten Per Cent | Six Per Cent Interest |
|---|---|---|
| March, 1940 | $ 295.14 | $ 471.91 |
| May, 1940 | 201.82 | 300.06 |
| June, 1940 | 698.00 | 998.14 |
| July, 1940 | 387.02 | 531.42 |
| August, 1940 | 651.21 | 870.34 |
| Totals | $2233.19 | $3171.87 |

Defendant in collecting said sums collected interest at a higher rate than the maximum allowed by law. Under Art. 5073, plaintiff is entitled to recover double the total of the excessive interest so charged. Double the amount of such excessive interest is $10,810.12, and plaintiff is entitled to recover interest thereon at the rate of six per cent per annum from February 15, 1944, which was law day in the court below.

The judgment of the court below will therefore be reformed so as to award plaintiff recovery against defendant in said sum of $10,810.12, together with interest from February 15, 1944, as aforesaid. And as so reformed the judgment of the trial court is affirmed.

Reformed and affirmed.

### Appendix

"Special Issue No. 1. Do you find from a preponderance of the evidence that on or about September 15, 1940, plaintiff agreed with defendant that if defendant would sell plaintiff the oil well supplies and equipment with which to complete plaintiff's Rorick No. 1 Well on an extended credit basis, that plaintiff would pay in addition to the current price 10% additional for the material and supplies already purchased and for those to be furnished for the Rorick Well with the right to discount the bills for the materials for the completion of the Rorick well in accordance with the defendant's usual 2% discount, if paid by the 20th proximo and with the further right to discount said bills at current prices if paid on a current basis?" (Answered: No.)

"Special Issue No. 2. Do you find from a preponderance of the evidence that on or about September 25, 1940, plaintiff agreed with defendant that if defendant would sell to plaintiff on an extended credit basis the necessary materials and supplies to carry out the three-well drilling

program which plaintiff had then determined upon that plaintiff would pay the defendant for the materials and supplies furnished for the three wells 10% additional to the current prices therefor, with the right to discount the bills therefor if paid by the 20th proximo in accordance with defendant's usual 2% discount and with the further right to discount said bills at current prices if paid on a current basis?" (Answered: No.)

"Special Issue No. 3. Do you find from a preponderance of the evidence that on or about August 27, 1941, plaintiff agreed with defendant that if defendant would sell to plaintiff on an extended credit basis the pipes, valves, fittings and supplies to be used in the construction of a recycling plant that plaintiff would pay 10% therefor in addition to the current price for said materials and supplies with the right to discount the bills therefor if paid by the 20th proximo in accordance with defendant's usual 2% discount and with the further right to discount said bills at current prices if paid on a current basis? (Answered: Yes.)

"Special Issue No. 8. Do you find from a preponderance of the evidence that when defendant agreed with plaintiff to sell it the material with which to complete the Rorick Well and as part of the consideration for the purchase of such materials, it was understood and agreed that plaintiff would not be required to pay for any supplies and materials which it already had purchased from defendant or should purchase for the completion of the Rorick well until it had a reasonable opportunity to obtain funds therefor either from production from, or a loan on, or a sale of its Joyce Richardson Field Holdings?" (Answered: Yes.)

"Special Issue No. 9. Do you find from a preponderance of the evidence that the 10% financing charge which the parties agreed upon to be added to the current prices for the supplies and materials sold was a part of the consideration for defendant's agreeing to sell plaintiff supplies and materials beginning with the materials and supplies for the Rorick Well under an arrangement whereby plaintiff obtained the right to pay for the materials and supplies which it purchased from defendant on an extended credit basis at current prices plus said 10%?" (Answered: Yes.)

"Special Issue No. 10. Do you find from a preponderance of the evidence that on or about November 25, 1940, or before said date, it was agreed between plaintiff and defendant that a 10% charge should be added to the price of all past due purchases and said original purchase price plus said 10% be placed in the form of notes bearing 6% interest and that as to future purchases, if the same were paid by the 20th of the following month a 2% discount would be allowed, and if not paid at the expiration of 30 days, that 10% should be added to the amount of said purchases and the total amounts placed in monthly notes bearing interest from their date at 6% per annum?" (Answered: Yes.)

"Special Issue No. 11. Do you find from a preponderance of the evidence that the materials sold by the defendant to the plaintiff after August 27, 1941, were sold under an agreement that if the price of said goods was paid on the 20th of the following month a 2% discount would be allowed, and if not paid at the expiration of thirty days 10% was to be added and the said amount of the sale, plus said 10%, placed in notes bearing 6% interest per annum from their date?" (Answered: Yes.)