**INTERNATIONAL HARVESTER COMPANY and International Harvester Credit Corporation, Appellant,**

v.

**Francis ROTELLO, Appellee.**

**No. 17318.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 22, 1979.

Rehearing Denied April 26, 1979.

Vinson & Elkins, Robert A. Rowland, III, Houston, for appellant.

Sears & Burns, C. Charles Dippel, Houston, for appellee.

Before COLEMAN, C. J., and DOYLE and PEDEN, JJ.

DOYLE, Justice.

In March of 1974, plaintiff and appellee, Francis Rotello, (Rotello) entered into an installment contract for the purchase of a

farm tractor with International Harvester Company (IHC). Execution of the contract took place at the IHC store in Bryan, Brazos County, Texas. The contract displayed on its face a stated cash price of $17,214.00 and a stated deferred payment price of $23,082.10. The difference between the cash price and the deferred payment price, the amount of $5,868.10, is denominated as finance charge. Rotello chose the deferred payment price, made a down payment of $3,000.00 and agreed to pay the remaining $20,082.10 in four annual installments beginning in May 1975. After a refinancing arrangement with International Harvester Credit Corporation (IHCC) of Dallas, Dallas County, Texas, to whom IHC had assigned Rotello's contract, Rotello paid the contract in full in October 1977. In March 1978, Rotello, a non-resident of Brazos County, brought suit against IHC and IHCC in Brazos County for usury penalties claiming that the 1974 contract was in violation of the Texas Consumer Credit Code because IHC had entered into a contract for usurious interest and IHCC had actually collected and received such interest. The suit by Rotello was filed in Brazos County, Texas, where the contract was made, pursuant to the venue statute 1995, exception 30 and sections 5069–1.06 and 5069–8.04 of the Texas Consumer Credit Code. Each of the defendants filed answers and pleas of privilege to be sued in Dallas County, Texas, the county of their residence.

From the order of the trial court overruling both pleas of privilege, the defendants have perfected this appeal.

Defendants contend by their points of error 1 and 2 that the trial court erred in overruling defendants' pleas of privilege because Rotello failed to establish the venue facts necessary under an exception to venue set out in Art. 5069–1.06, V.A.T.S., and that the trial court further erred in overruling the pleas because the evidence established conclusively that the finance charge involved was a valid time-price differential and was not usurious under Texas law.

The question of whether venue may be sustained by invoking the provisions of art. 5069–1.06(3) has been before the courts of this state on many occasions. To maintain venue in Brazos County, the plaintiff in our case must allege and prove at least one of the following venue facts: (1) that at least one of the defendants, IHC or IHCC, resided in Brazos County; (2) that usurious interest was received or collected by defendants in such county; (3) that the usurious contract was entered into in such county; (4) that plaintiff, (Rotello) who paid the usurious interest on such contract, resided in Brazos County at the time the contract was made. *Universal Credit v. Dunklin*, 129 Tex. 324, 105 S.W.2d 867 (1937); *Ballard v. Shock*, 91 S.W.2d 385 (Tex.Civ.App.-Eastland 1933, no writ).

Art. 5069–1.06 provides for the usury penalty only where a person "contracts for, charges or receives interest" greater than the amount authorized by law. The article defines interest in 1.01 as follows:

"Interest" is the compensation allowed by law for the use or forbearance or detention of money; provided however, this term shall not include any time price differential however denominated arising out of a credit sale.

Plaintiff contends that the facts of our case bring it within such definition of interest, while the defendant argues that such facts constitute a valid time-price differential transaction, expressly excluded under the Texas usury law. Time-price differential is defined twice under the article with reference to retail installment sales and motor vehicle installment sales, respectively.

Art. 5069–6.01(h):

"Time price differential," however denominated or expressed, means the amount which is paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time. The term includes the amount authorized by this Chapter when the party has amended the contract to renew, restate, or reschedule the unpaid balance thereof or to extend or defer the scheduled due date of all or any part of any installment or installments.

Article 5069 7.01(i):

"Time price differential" means the total amount to be added to the principal balance to determine the balance of the buyer's indebtedness to be paid under a retail installment contract.

With these definitions before us, we shall now examine the facts. These are the relevant portions of the retail installment contract:

| 1. | SALES PRICE | | 17214 | 00 |
| 2. | SALES TAX | | -0- | |
| 3. | CASH PRICE (Includes Tax) | | 17214 | 00 |
| 4. | CASH DOWNPAYMENT | 3000.00 | | |
| | TRADE-IN (Net Allowance) | -0- | xxxxx | xx |
| | TOTAL DOWNPAYMENT | | 3000 | 00 |
| 5. | UNPAID BALANCE OF CASH PRICE (3 Less 4) | | 14214 | 00 |
| 6. | OTHER CHARGES: | | | |
| | a. Official Fees | -0- | xxxxx | xx |
| | TOTAL OTHER CHARGES | | -0- | |
| 7. | UNPAID BALANCE (Amount Financed) (TOTAL OF 5 and 6) | | 14214 | 00 |
| 8. | FINANCE CHARGE | | 5868 | 10 |
| | ANNUAL PERCENTAGE RATE 15.9% | | | |
| 9. | TOTAL OF PAYMENTS TOTAL OF 7 and 8) | | 20082 | 10 |
| 10. | DEFERRED PAYMENT PRICE TOTAL OF 3, 6 and 8 | | 23082 | 10 |

The contract entered into between International Harvester Company and Rotello states a cash price and a deferred payment price containing a time-price differential, denominated therein as a finance charge. Rotello testified that at the hearing on the pleas of privilege he knew he could either buy the tractor for the cash price of $17,214 or pay for it over a period of time for an additional charge. He testified that he chose the latter method of paying for the tractor, that is, on time credit, with an additional charge made therefor. He knew that the deferred payment price would be $23,082.10.

The face of the retail installment contract reflects that a finance charge of 15.9% per annum was added to the cash price to arrive at the credit price. This method of computing the time-credit price was expressly approved in *Rattan v. Commercial Credit*, 131 S.W.2d 399 (Tex.Civ.App.-Dallas, 1939, writ ref'd); *Standard Supply & Hardware Company v. Christian-Carpenter Drilling Company*, 183 S.W.2d 657 (Tex.Civ. App.-Galveston, 1944, writ refused); *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249 (Tex.Civ.App.-San Antonio, 1978, writ ref'd n. r. e.).

In the *Rattan* case, supra, the purchaser was given a choice of buying a new automobile for a cash price of $1,125 or a deferred credit price of $1,310. The purchaser elected to purchase at the credit price, paying $375.00 down, and agreeing to pay the remaining $936.00 in monthly installments over a two year period. After default, upon a suit for the balance by the seller, the purchaser raised the defense of usury. The judgment of the trial court for the seller was affirmed on appeal, the court holding that no interest was charged in this transaction; and, therefore, the seller was not guilty of any usury. In its fully detailed opinion, the court stated:

No money changed hands in the transaction in the form of a loan, nor was any charge made for the use, detention or forbearance of any money. The transaction was simply a sale for credit at a higher price than for cash, calculated on a known basis for the seller to realize the cash price of an automobile by subsequent sale of the note and mortgage through commercial channels. Where, in a bonafide sale, no loan of money is involved, a purchaser buys an automobile from a regular automobile dealer for a credit price, known to the purchaser to be higher than the cash price, and signs a note and chattel mortgage for the unpaid balance, such transaction is an actual sale of the automobile on time or credit selling price, mutually agreed upon by the parties, and such note and mortgage thus given for the balance, providing for interest, only in the case of default, at the highest legal rate, is not usurious. A seller may demand one price for cash and another and greater price upon credit, and it would not be usury.

The Court of Civil Appeals was faced with the problem of distinguishing between interest and finance charges in *Lusk v. General Motors Acceptance Corporation* 395 S.W.2d 847 (Tex.Civ.App.-Tyler, 1965, no writ). In that case the court found that a finance charge of $561.10 was added to a cash price of $2,336.18 making a total credit price of $2,897.28 in a transaction involving

a conditional sales contract. There the court, in holding against the Lusks, pointed out that the initial finance charge was not interest and that the $561.10 charge was not designated on the face of the contract as interest but rather as finance charges.

The original contract between Rotello and International Harvester Company is not usurious on its face. The contract provided for four annual payments and a time-price differential of 15.9%. The cash price, the deferred payment price, and the finance charge all are displayed on the face of the retail installment sales contract.

■ From the authorities cited and checked, if the retail installment contract shows on its face that there is a cash price and a deferred payment price which are revealed to the purchaser at the time of the making of the contract, and that the finance charges are set forth as such, the amount of such finance charges will not be deemed interest, but a time-price differential paid for privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time. We find the contract between Rotello and IHC falls squarely between these guidelines and is without the purview of the usury law. Defendants' points of error one and two are sustained.

We have checked all cases cited by Rotello to show that the subject contract was not a time-price contract. *G. F. C. Corporation v. Williams*, 231 S.W.2d 565 (Tex.Civ.App.-Dallas 1950, writ ref'd n. r. e.) is distinguishable. In that case only one price was offered to the purchaser. Again in *Gifford v. State*, 229 S.W.2d 949 (Tex.Civ.App.-El Paso 1950, no writ); *Associates Investment Co. v. Ligon*, 209 S.W.2d 218 (Tex.Civ.App.-Austin 1948, no writ) and *Associates Investment Co. v. Sosa*, 241 S.W.2d 703 (Tex.Civ. App.-San Antonio 1951, err. dism.), all cases cited by Rotello, the seller offered only one price to the purchaser. The *Rattan v. Commercial Credit Co.* case, supra, sets forth a two-price requirement. It is interesting to note that all cases cited by Rotello on the time-price differential contract recognize and approve the rule set out in the *Rattan* case, supra.

■ A large portion of Rotello's brief is devoted to what the legislature did or did not intend by the various provisions of the Texas Consumer Credit Code. In this vein, Rotello argues that if a time-price differential is exempted under 5069–1.01, then it must be usurious under the Texas Constitution Article XVI, Section 11, which provides that if the legislature does not fix a maximum rate, then a contract for a greater rate of interest than 10% per annum is deemed usurious.

No contention is made that the Texas Constitution does not give the legislature the authority to define interest. In its definition of interest the legislature has differentiated between interest and a time-price transaction. To date the legislature has not seen fit to redefine interest and this court is bound by the unambiguous provisions of art. 5069–1.01 and 6.01.

We have carefully considered the counterpoints urged by Rotello and the arguments and cases listed thereunder. We do not find them to be supported by the facts and the applicable law. We are unable to determine from the evidence that Rotello proved any venue exceptions necessary to sustain venue in Brazos County under Title 79.

The order of the trial court overruling defendants' pleas of privilege is reversed and the trial court is directed to transfer venue of the case to the County of Dallas, Texas.