HUGH ROBISON FARM MACHINERY, INC. and Security State Bank of Navasota, Texas, Appellants,

v.

Henry WIED, Appellee.

No. 17489.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 8, 1979.

Rehearing Denied Dec. 6, 1979.

Fultz & Davis, John M. Fultz, Navasota, for appellants.

John V. Elick, Bellville, for appellee.

COLEMAN, Chief Justice.

This is an appeal from a judgment denying the pleas of privilege filed by Hugh Robison Farm Machinery, Inc. (Robison) and Security State Bank of Navasota, Texas (Security Bank). The question involved is whether venue was properly maintainable in the county of the plaintiff's residence under the special venue provisions of the usury statute, art. 5069–1.06(3), Texas Revised Civil Statutes Annotated. The judgment will be affirmed.

This controversy grew out of two purchases by Wied of farm equipment from Robison. The first of these was the purchase of a tractor pursuant to a "Retail Installment Contract for Agricultural and Industrial Equipment" dated March 25, 1976. The second transaction involved the purchase of a planter and two cultivators and is evidenced by a similar contract dated July 26, 1976. This document shows a "cash price" of $6,365.00 and a "deferred payment price" of $6,887.18. A "down payment" of $2,365.00, an "unpaid balance of cash price" of $4,000.00, a "finance charge" of $522.18, and an "annual percentage rate" of 15.9% are also shown on the face of the contract document.

At the venue hearing, Wied established that he has been a resident of Austin County since 1969. He testified that he pur-chased the equipment shown on the two instruments from Robison. He stated that throughout the negotiations for these purchases Robison had explained that there would be interest charges of 15.9%. Mr. Wied testified that he agreed to purchase the cultivators and the planter on March 14, 1976, at which time he was given an invoice showing the price of each item and a total price of $6,365.00. This instrument was introduced into evidence. In order to obtain financing, he signed a "Retail Installment Contract for Agricultural Equipment" in blank on July 26, 1976, or possibly at some time prior to that date. This instrument showed a cash down payment of $2,365.00 which in fact was not made. It reflected the cash sales price of $6,365.00 and the deferred payment price of $6,887.18. Wied testified he was not quoted the deferred payment price by Robison, but that Robison did tell him that, if the purchase could be financed by International Harvester Company, interest at the rate of 15.9% would have to be charged.

Robison denied that Wied had ever been told that he would be charged interest. He insisted that the terms "time differential" or "finance charge" were always used rather than interest. He agreed that the bargain for the cultivators and the planter was made in April, 1976, but he asserted that the contract executed by the parties had no blanks when signed by Wied. Robison testified that at the time of the sale of the cultivators he thought he might carry the account personally, but that later he determined to assign the contract to the Security Bank, and that the bank credited his account with $4,000.00 as a result of that transaction. After this assignment was made, the bank informed Wied that it had purchased the "installment note" from Robison and sent him a coupon book for payment in two annual installments. Wied testified that he had paid this obligation in full, although he was forced to seek an extension at one time. In order to obtain this extension, Wied testified that he made a payment of interest by check. After Wied paid the bank in full, he requested

that they send him the "paid note" and the bank sent him an instrument purporting to be a note. This instrument did not bear the signature of Wied but his name was typed in the signature blank.

In his original petition Wied asserts that both of the contracts were usurious, and seeks damages and attorneys' fees. Both of the appellants filed pleas of privilege, and Wied filed controverting affidavits.

The appellants assert that the plaintiff failed to establish the venue facts necessary to sustain venue in the county of the plaintiff's residence under the exception to venue found in art. 5069–1.06 Vernon's Revised Civil Statutes. They also assert that the evidence conclusively established that the finance charge involved was a valid time-price differential, and that such a finance charge is not interest and therefore not usurious under Texas law. These points of error require interpretation of art. 5069–1.06.

Although venue is generally proper in the county of the defendant's domicile under article 1995, Tex.Rev.Civ.Stat.Ann., subsection 30 thereof sets out a special venue exception:

> Whenever in any law authorizing or regulating any particular character of action, the venue is expressly prescribed, the suit shall be commenced in the county to which jurisdiction may be so expressly given.

Venue for actions pursuant to chapter 1 of the Texas Interest-Consumer Credit-Consumer Protection Code (Texas Consumer Credit Code) is governed by art. 5069–1.06(3) providing:

> All such actions brought under this Article shall be brought in any court of this State having jurisdiction thereof within four years from the date when the usurious charge was received or collected (1) in the county of the defendant's residence, or (2) in the county where the interest in excess of the amount authorized by this Subtitle has been received or collected, or (3) where such transaction had been entered into, or (4) where the parties who paid the interest in excess of the amount

authorized by this Subtitle resided when such transaction occurred, or (5) where he resides. (numbers added)

The plaintiff relies on subdivisions 4 and 5 to sustain venue in Austin County since he resided in that county at the time of both purchases from appellant, and still resides in that county. He asserts that under subdivision 5 the only venue fact requiring proof at the venue hearing is evidence that at the time of the institution of the suit the plaintiff resided in the county where the suit was brought.

■ The language which we have numbered (4) and (5) must be read together. The language "or where he resides" obviously refers back to the language "where the parties who paid the interest in excess of the amount authorized by this Subtitle resided". The statute authorizes a party who paid usurious interest to bring suit in the county where he resided when such transaction occurred or where he resided when the suit was filed. A necessary venue fact is proof that usurious interest was paid by Wied. *Universal Credit Company v. Dunklin*, 129 Tex. 324, 105 S.W.2d 867 (1937); *International Harvester Company v. Rotello*, 580 S.W.2d 418 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

■ In reaching this conclusion we have considered *Allied Finance Company v. Miro*, 568 S.W.2d 910 (Tex.Civ.App.—Waco 1978, no writ) and *Donald v. Agricultural Livestock Finance Corporation*, 495 S.W.2d 592 (Tex.Civ.App.—Fort Worth 1973, no writ), wherein these courts hold that it is not necessary to introduce proof of a meritorious case for usury under the fifth alternative of art. 5069–1.06, supra. The holding in these cases is not consistent with the reasoning set out in *Universal Credit Company v. Dunklin*, supra, and two cases which are cited therein, *Ballard v. Shock*, 91 S.W.2d 385 (Tex.Civ.App.—Eastland 1933, no writ) and *Compton v. Elliott*, 126 Tex. 232, 88 S.W.2d 91 (1935). These cases support our conclusion that Wied had the burden to allege and prove a meritorious cause of action for usury and that he resided in the county of suit.

**734**

In *International Harvester Company v. Rotello*, supra, we stated:

> . . . if the retail installment contract shows on its face that there is a cash price and a deferred payment price which are revealed to the purchaser at the time of the making of the contract, and that the finance charges are set forth as such, the amount of such finance charges will not be deemed interest, but a time-price differential paid for [the] privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time . . .

■ The present case is not governed by *Rotello* because we must presume a finding by the trial court in support of its judgment that no deferred payment price was revealed to the purchaser at the time of the making of the contract for the equipment on April 14, 1976, and that the retail installment contract executed on July 26, 1976 for such equipment was signed in blank. The testimony of Mr. Wied supports both of these implied findings.

There is evidence to support a finding that Robison charged, and the Security State Bank received, interest at the rate of 15.9% per annum on the purchase price of the planter and cultivators. An inference may be drawn from Mr. Wied's testimony that he was only quoted a cash price in connection with the sale of the cultivators and the planter, and that the instrument which he signed relating to this purchase was signed in blank. An inference may be drawn that the blanks were filled in by Robison in a manner contrary to the agreement of the parties. In such a case the party signing the instrument is not bound thereby if the instrument after it is completed does not reflect the true agreement. *Sentinel Fire Ins. Co. v. Anderson*, 196 S.W.2d 649 (Tex.Civ.App.—Amarillo 1946, no writ); *Kaiser v. Northwest Shopping Center, Inc.*, 544 S.W.2d 785 (Tex.Civ.App.—Dallas 1976, no writ).

The trial court recited in the judgment overruling the pleas of privilege that the defendants were guilty of usury and that the plaintiff Henry O. Wied resided in Austin County at such time. There is evidence to support both of these fact findings. *Anguiano v. Jim Walters Homes, Inc.*, 561 S.W.2d 249 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.).

The judgment is affirmed.

DOYLE and WALLACE, JJ., also sitting.