

# The Attorney General of Texas

August 26, 1980

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Robert E. Stewart
Banking Commissioner
Department of Banking
2601 North Lamar
Austin, Texas 78705

Opinion No. MW-229

Re: Time credit prices for prepaid funeral contracts

Dear Commissioner Stewart:

The Department of Banking is charged with the administration of article 548b, V.T.C.S., which regulates the sale of prearranged or prepaid funeral merchandise. Contracts therefor must be in writing on forms approved by the Department and must set forth the particulars of the merchandise, the professional services, and the facilities to be provided. V.T.C.S. art. 548b, §2. You ask:

> May a time price differential be included in a contract for prearranged benefits when the payments on the contracts are on a deferred basis?

The term "time price differential" is used in the Retail Installment Sales Act, chapter 6, of the Consumer Credit Code, to mean the amount paid for the privilege of purchasing goods and services, as there defined, that are to be paid out in installments over a period of time. V.T.C.S. art. 5069-6.01(h). It signifies the difference between the seller's "cash price" and his "credit price" for the goods and services sold. A time price differential arising out of a credit sale does not constitute interest, and an authorized, bona fide charge does not constitute usury. V.T.C.S. arts. 5069-1.01, 5069-2.01(h); Rattan v. Commercial Credit Co., 131 S.W. 2d 399 (Tex. Civ. App. - Dallas 1939, writ ref'd).

We have concluded that contracts for prearranged funeral benefits regulated by the department under article 548b may not properly include a "time price differential," even though payments on the contracts are deferred, because such contracts do not evidence "retail installment transactions" within the meaning of the Retail Installment Sales Act, nor "credit sales" within the meaning of articles 5069-1.01 and 5069-2.01(h), V.T.C.S.

Article 548b expressly provides that the date of death of the beneficiary of such a contract shall be the maturity date of the contract. Id. §5(3). Moreover, it provides that the delivery of funeral merchandise

prior to death shall not constitute performance or fulfillment, either wholly or in part, of any such contract. Id. §1. All monies paid by the purchaser on the contract must be deposited in a trust fund for the use and benefit of the purchaser or beneficiary, except that a statutorily designated amount may be retained by the seller. Id. §5(1), (2). The purchaser may cancel the contract at any time before maturity and recover back all monies paid except such amounts retained. Id. §5(4). See Falkner v. Memorial Gardens Assoc., 298 S.W. 2d 934 (Tex. Civ. App. - Austin 1957, writ ref'd n.r.e.).

In 1967 the Texas Legislature enacted the Consumer Credit Code, declaring a need for "a comprehensive code of legislation to clearly define interest and usury,. . . to regulate credit sales and services, and place limitations on charges imposed in connection with such sales and services" in consumer transactions. Acts 1967, 60th Leg., ch. 274 at 608. Chapter six thereof, the Retail Installment Sales Act, regulates retail installment transactions and allows the inclusion of time price differentials therein. See V.T.C.S. arts. 5069-6.01, 5069-6.02(9)(a). "Goods" are defined in article 5069-6.01 to mean tangible personal property when purchased for personal, family or household use and not for commercial or business use, excluding money, things in action or intangible personal property. The definition of "services" excludes the services of a professional person licensed by the state except when rendered in connection with the purchase of "goods." V.T.C.S. art. 5069-6.01(a), (b).

Funeral directors and embalmers are professional persons licensed by the state. V.T.C.S. art. 4582b. Although funeral directors' services are often rendered in connection with the purchase of tangible property, such as caskets and grave vaults, the purchaser of a prearranged funeral contract does not thereby acquire title to any specific goods. He acquires only the right to have tangible goods, as well as services, of a particular description provided at a future but uncertain time.

The seller parts with no goods nor with the title to any specific goods prior to the death of the beneficiary, and the contract forms approved by the Department of Banking uniformly stipulate that the seller is under no obligation to deliver or provide any merchandise for which the stipulated purchase price has not been fully paid. See V.T.C.S. art. 548b, §2. Under such terms, no "sale" of funeral merchandise or services occurs until that time, and when it occurs it is a "cash sale," not a "credit sale."

A "sale" consists of the passing of title from the seller to the buyer for a price. Bus. & Com. Code §2.106. See First National Bank v. Ryerson & Son, Inc., 487 S.W. 2d 377 (Tex. Civ. App. - Texarkana 1972, writ ref'd n.r.e.). Goods must be both existing and identified before any interest in them can pass. Bus. & Com. Code §2.105. See Bus. & Com. Code §§2.102, 9.109, 9.203(d); 50 Tex. Jur. 2d rev. Sales §18 at 270 (1969). The codes do not define a "credit sale," nor have Texas cases been found that define the precise term, but Texas courts, in our opinion, would agree with the court in Parnell v. Baham, 228 So. 2d 53 (La. App. - 4th Cir. 1969, writ ref'd), where it was said:

> A 'cash sale' contemplates the concurrence of the payment with delivery and the transfer of ownership. . . . When delivery is made and ownership transferred by the seller to the purchaser upon an agreement that the purchaser will pay later - whether

> it be hours, days, or longer - it is a credit sale. The seller parts with his goods upon the promise of the purchaser to pay. (Emphasis added)

Cf. Rush v. Smitherman, 294 S.W. 2d 873 (Tex. Civ. App. - San Antonio 1956, writ ref'd.)(similar facts).

The effect of the contracts authorized by article 548b, V.T.C.S., and approved by the Department of Banking is to give the purchasers thereof an option to later acquire funeral goods and services of a particular description at specified prices, and to have the consideration paid for the option applied against the purchase price of the goods when acquired and the services when performed.

An option to purchase is a contract supported by consideration whereby one party sells to another party the right, at the election of the latter, to purchase certain described property, for the price and upon the terms and conditions of the contract. Ferguson v. von Seggern, 434 S.W. 2d 380 (Tex. Civ. App. - Dallas 1968, writ ref'd n.r.e.). Cf. Clayton Brokerage Co. v. Mouer, 520 S.W. 2d 802 (Tex. Civ. App. - Austin 1975), writ dism'd, 531 S.W. 2d 805) (Tex. 1975) (London option). It is not a sale of tangible property; it is the sale of a privilege to acquire tangible property. Knox v. Brown, 277 S.W. 91 (Tex. Comm'n App. 1925). See 50 Tex. Jur. 2d rev. Sales §40 at 304 (1969).

Here, the buyer has a statutory right to elect at any time (prior to the maturity of the contract) to cancel the arrangement and pass up the purchase, forfeiting only the small retainage allowed the seller and recovering the remainder of all he has paid. Clearly, the initial transaction is not a sale of tangible property; it is but the sale of a privilege to acquire it later. As a consequence, neither the pre-code nor post-code cases cited to us as authority for a different result can be applicable here. Whether or not other distinctions might also be made, they all involved in contracts effecting bona fide sales of tangible property. See International Harvester Co. v. Rotello, 580 S.W. 2d 418 (Tex. Civ. App. - Houston [lst Dist.] 1979, no writ); Anguiano v. Jim Walter Homes, Inc., 561 S.W. 2d 249 (Tex. Civ. App. - San Antonio 1978, writ ref'd n.r.e.); Standard Supply & Hardware Co. v. Christian-Carpenter Drilling Co., 183 S.W. 2d 657 (Tex. Civ. App. - Galveston 1944, writ ref'd); Rattan v. Commercial Credit Co., supra.

### SUMMARY

A time price differential may not be included in contracts for prearranged or prepaid funeral benefits regulated by article 548b, V.T.C.S.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Jon Bible
Cathy Frayer
Susan Garrison
Rick Gilpin
Bruce Youngblood