Francis ROTELLO, Appellant,

v.

INTERNATIONAL HARVESTER COM-
PANY and International Harvester
Credit Corporation, Appellees.

No. 20772.

Court of Appeals of Texas,
Dallas.

Sept. 3, 1981.

Rehearing Denied Oct. 7, 1981.

C. Charles Dippel, Sears & Burns, Hous-
ton, for appellant.

Robert A. Rowland, III, Vinson & Elkins,
Houston, for appellees.

Before AKIN, ROBERTSON and STOREY, JJ.

AKIN, Justice.

This is an appeal by plaintiff, Francis Rotello, from a summary judgment granted defendants, International Harvester Company (IHC) and International Harvester Credit Corporation (IHCC). Rotello sued IHC and IHCC to recover penalties and attorney fees for alleged violations of Tex. Rev.Civ.Stat.Ann. art. 5069 (Vernon 1971), contending that the finance charge in question was usurious under subtitle 1 of article 5069, Tex.Rev.Civ.Stat.Ann. arts. 5069–1.01 to –1.06, or alternatively, a time-price differential charged in violation of subtitle 2 of article 5069, Tex.Rev.Civ.Stat.Ann. arts. 5069–2.01 to –8.06. IHC and IHCC moved for summary judgment, which the trial court granted. We affirm on the ground that the summary judgment evidence establishes as a matter of law, that the finance charge in question was a time-price differential and, therefore, not interest regulated under subtitle 1 of article 5069. We also hold that the finance charge was not a time-price differential regulated under subtitle 2 of article 5069.

The facts are undisputed. In March 1974, Rotello and IHC entered into an installment contract for the purchase of a farm tractor and implements. The contract displayed on its face a stated cash price of $17,214 and a stated deferred payment price of $23,082.10. The difference between the cash price and the deferred payment price, $5,868.10, was based on a 15.9% annual rate of the cash price and was denominated as a finance charge. Rotello chose the deferred payment price, made a down payment of $3,000 and agreed to pay the remaining $20,082.10 in four annual installments beginning in March 1975. After a refinancing arrangement with IHCC, to which IHC had assigned Rotello's contract, Rotello paid the contract in full in October, 1977. Subsequently, Rotello brought this suit, alleging that the finance charge was usurious under subtitle 1 of article 5069 and was a time-price differential not authorized by subtitle 2 of article 5069 and thus was unlawful.

Although article 5069 does not clearly define what charges may be included in a time-price differential, our study of the statute and the applicable authorities has convinced us that the charge in question is a permitted time-price differential, which is not limited either in amount or by the type of goods sold, except as provided in subtitle 2, if the purchaser was given an option to pay a lower cash price. Subtitle 1 of article 5069 defines usury (article 5069–1.01(d)) and provides that any rate of interest greater than ten percent per annum is usurious unless otherwise authorized by law, and article 5069–1.01(a) specifically excludes from the definition of interest "any time-price differential however denominated arising out of a credit sale." A similar exclusion appears in the definition of interest in article 5069–2.01(h). Subtitle 2 of article 5069 regulates certain specified types of credit sales,[1] but not all credit sales. Thus, subtitle 1 establishes the general rule subject to the exceptions elsewhere authorized by law. These exceptions are contained in subtitle 2 and in Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (Vernon 1980). See *Rotello v. Twin City International, Inc.*, 616 S.W.2d 318, (Tex. Civ.App.—Houston [1st Dist.] 1981, no writ).

Rotello argues that since article 5069 is a comprehensive regulation of all credit transactions, the time-price differentials excluded from the definition of interest in article 5069–1.01(a), are only those regulated by subtitle 2, and therefore, only time-price differentials in the sale of manufactured homes, motor vehicles and consumer goods are exempt from the usury permitted in article 5069–1.06. We cannot agree because this contention is contrary to the

---

1. Chapter 2 of subtitle 2 sets forth general provisions; Chapters 3, 4, and 5 pertain to the regulation of loans; Chapter 6 deals with the charging of time-price differentials in retail installment sales of consumer goods not for commercial or business use; Chapter 6A regulates installment sales of manufactured homes; Chapter 7 regulates the charging of time-price differentials in the sale of motor vehicles; and Chapter 8 sets forth the penalties for charging or receiving interest or time-price differentials greater than authorized.

language of article 5069, which does not limit time-price differentials to those regulated by other provisions of the statute. If the legislature had intended to prohibit the charging of time-price differentials in all credit sales except those authorized in subtitle 2, the legislature would have prohibited them in subtitle 1, which establishes the general rule for usury. Instead, the legislature chose to exclude "any time-price differential however denominated arising from a credit sale" from the definition of interest in article 5069–1.01(a) and in article 5069–2.01(h) and to regulate them in only three specific instances—the sale of manufactured homes, motor vehicles, and consumer goods. We hold, therefore, that the finance charge arising from the credit sale of the tractor and implements to Rotello by IHC was not interest, and therefore cannot be made the basis of a usury claim.

 In this respect, Rotello attempted to raise a fact issue as to whether the finance charge was a time-price differential or interest within the meaning of article 5069–1.01(a). Rotello asserted that he was not offered a cash price and a deferred payment price, but only one price was offered because IHC knew he could not pay the cash price and from the outset both parties agreed to financing by IHC. When only one price is offered, Rotello contends, the finance charge is interest and not a time-price differential. We agree that a cash price and a deferred payment price must be offered the purchaser at the time of contract and that the finance charge must be set forth in the contract before a finance charge will be deemed a time-price differential. *Rotello v. Twin City International, Inc.*, 616 S.W.2d 318, (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). We do not agree, however, that a material fact issue exists. Merely because a buyer cannot pay the cash price and the seller knows it, does not convert a time-price differential into interest, nor does it establish that Rotello was not offered a cash price. Thus, we hold that because the contract displayed a cash price and a deferred payment price on its face at the time of contracting which was revealed to the purchaser and the contract displayed a finance charge denominated as such, the fact that the buyer could not pay cash and the seller knew it did not create a material issue of fact.

In support of his contention, *supra, Rotello* cites *Hugh Robinson Farm Machinery, Inc. v. Wied*, 593 S.W.2d 731 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ), which held a similar contract to be usurious. *Wied* is distinguishable because the purchaser signed the contract in blank and thus, when executed, it failed to show both a cash price and a deferred payment price. Because of this failure, the *Wied* court held that the contract failed to comply with subtitle 1 of article 5069 by not offering both a cash price and a deferred payment price. In this case, however, the contract displayed on its face a cash price and a deferred price when executed. Consequently, *Wied* is inapplicable.

We recognize the force of Rotello's principal argument that if all time-price differentials are not regulated by article 5069, the seller, in situations such as here, is free to charge any amount, no matter how high, so long as he offers a cash price and a deferred payment price. For example, in *Mid States Homes, Inc. v. Sullivan*, 592 S.W.2d 29 (Tex.Civ.App.—Beaumont, 1979, writ ref'd n. r. e.), that court upheld a finance charge of $3,518.40 on a house with a cash price of $4,350, or eighty percent of the cash price of the house. Conceivably, the finance charge may exceed the cash price by any amount the seller desires, so long as he denominates it a deferred payment price and offers the buyer a choice between the cash price and a deferred payment price.

 We recognize that if the buyer believes that the finance charge is actually a subterfuge for charging interest, he has an almost impossible burden of proof. The seller may defend on the ground that the contract is not usurious on its face because it displays a cash price and a deferred payment price. The buyer must then show that the dominant purpose and intention of the parties embodied in the contract and in light of the attending circumstances and

governing rules of law, manifests an intent to exact more interest than allowed by law. *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935 (1935). Additionally, the buyer must overcome the presumption of the validity of the contract. 80 S.W.2d at 937.

The buyer's burden is further compounded by the statute's lack of definite guidelines distinguishing time-price differentials and interest. Subtitle 1 of article 5069, Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(a), defines interest as "the compensation allowed by law for the use or forebearance or detention of money; provided, however, this term shall not include any time price differential however denominated arising out of a credit sale," but fails to define time-price differential. The only definitions of time-price defferentials are found in articles 5069–6.01(h) and 5069–7.01(i) and are limited to those sections. These definitions are nebulous at best. Article 5069–6.01(h) defines time-price differential as "the amount which is paid or payable for the privilege of purchasing goods and services to be paid for by the buyer in installments over a period of time." Article 5069–7.01(i) states:

> " 'Time Price Differential' means the total amount to be added to the principal balance to determine the balance of the buyer's indebtedness to be paid under a retail installment contract."

Since interest is defined in article 5069–1.01 as "the compensation allowed by law for the use or forbearance or detention of money," such a charge would logically evidence a time-price differential, since that is the amount the seller forbears to collect in order to realize a greater amount in future installments, except for the arbitrary exclusion of time-price differentials from the definition of interest. We fail to see any rational economic basis for the exclusion.

Because of this arbitrary exclusion, judicial interpretations have rested the distinction on the form of the transaction rather than its substance. The courts have held that a seller may charge a higher price for a credit sale and the difference between the cash price and the deferred payment price is the time-price differential. *Standard Supply and Hardware Co., v. Christian-Carpenter Drilling Co.*, 183 S.W.2d 657 (Tex. Civ.App.—Galveston 1944, writ ref'd); *Rattan v. Commercial Credit Co.*, 131 S.W.2d 399 (Tex.Civ.App.—Dallas 1939, writ ref'd); *Lusk v. General Motors Acceptance Corp.*, 395 S.W.2d 847 (Tex.Civ.App.—Tyler 1965, no writ); *Lamb v. Ed Maher, Inc.*, 368 S.W.2d 255 (Tex.Civ.App.—Dallas 1963, no writ).

Although we recognize the inherent problems for purchasers in the statute, any change must be made by the legislature. We have no authority to substitute what we think interest and time-price differential logically ought to be for the language used in the statute. The statute and case authority interpreting the statute are clear and support our holding here. Accordingly, the judgment is affirmed.